# Taylor v. Woods.

*Detinue before Justice of the Peace for Property exceeding Fifty Dollars in Value.*

1. *Constitution, rules for construction of.* — A new constitutional provision adopted by a people already having well defined institutions and; systems of law must not be construed as intended to abolish the former system, except in so far as in manifest repugnance to the new Constitution ; and in determining the real scope and meaning of the new provision, it must be read in the light of the former law and the existing systems.

2. *Same; Art. VI.* § 13 *of, effect of.* — Thus interpreted Art. VI. § 13 of the Constitution is not an express grant of civil jurisdiction to justices of the peace, but was intended to limit their jurisdiction to controversies involving a sum not exceeding one hundred dollars, leaving it to the general assembly to determine the class of cases in which it shall be extended to or reduced below that point.

3. *Justice of the peace ; jurisdiction of in actions of tort.* — The jurisdiction of justices of the peace in actions of *tort* never having been extended beyond fifty dollars by.act of the general assembly, that officer has no jurisdiction of an action for the recovery of chattels in *specie,* where the value claimed exceeds fifty dollars.

APPEAL from Circuit Court of Sumter.

Tried before Hon. LUTHER R. SMITH.

Taylor, appellant, brought detinue before a justice of the peace against appellee, Woods, to recover a bale of cotton alleged in the complaint to be of the value of a hundred dollars. The justice of the peace having rendered judgment in favor of the plaintiff for the cotton, or $80 its alternate value, an appeal was taken to the circuit court. In that court the defendant below, Woods, demurred, on the ground that it appeared from the papers filed in the cause that the specific property sued for exceeded fifty dollars in value, and the justice had not jurisdiction. It does not affirmatively appear from the record that the objection was raised before the justice. The circuit court sustained the demurrer, and hence this appeal.

COOKE & LITTLE, for appellant. — The objection to the jurisdiction was waived when the appellee went to trial without raising that question before the justice. Art VI. § 13 of the Constitution gives justices of the peace jurisdiction " *of all civil cases* " wherein the amount in controversy does not exceed one hundred dollars. This provision of the Constitution is declaratory, affirmative, and self-executing. The legislature has, therefore, no power to restrict the jurisdiction to fifty dollars in any class of cases. The statutes must give place to the Constitution.

GEORGE U. WALKER and JOHN T. WALKER, *contra.* — The Constitution of 1865 provided for the appointment of justices of the peace, " whose jurisdiction in civil cases shall be limited to causes in which the amount in controversy shall not exceed

[Taylor v. Woods.]

one hundred dollars." The words " in civil cases " as there used meant the same thing as the words " *in all civil cases* " used in the present Constitution. Yet under the Constitution of 1865 the jurisdiction was limited, in actions of this kind, to fifty dollars. The legislature in all its legislation on this subject has never lost sight of the difference between actions *ex contractu* and *ex delicto*. The law in the present sections of the Code has been of force under various constitutions, and indicates the significance and meaning attached by all departments of the government to the term " *civil cases* " as used in these different constitutions. This fact is of importance in determining the meaning in which the framers of the present Constitution used those words. If appellant's construction is right, the justice of the peace may take jurisdiction of libel and slander suits, trespass to try titles, &c.; the only restriction being that the amount in controversy does not exceed one hundred dollars.

BRICKELL, C. J. — The 10th section of the 5th article of the Constitution of 1819 (Clay's Dig. p. 35) declared : " A competent number of justices of the peace shall be appointed in and for each county, in such mode and for such term of office as the general assembly may direct. Their jurisdiction in civil cases shall be limited to causes in which the amount in controversy shall not exceed fifty dollars. And in all cases tried by a justice of the peace, right of appeal shall be secured, under such rules and regulations as may be prescribed by law."

This section was carried into the Constitution of 1865, without any other change than that the jurisdiction in civil cases was limited to causes in which the sum in controversy did not exceed one hundred dollars. Const. 1865, Art. VI. § 9 ; R. C. p. 42. The present Constitution declares : "A competent number of justices and constables shall be elected in and for each county by the qualified electors thereof, who shall hold office during such terms as may be prescribed by law. Said justices shall have jurisdiction in all civil causes wherein the amount in controversy does not exceed one hundred dollars. In all cases tried before such justices, the right of appeal shall be secured by law : *provided*, that notaries public appointed according to law shall be authorized and required to exercise, throughout their respective counties, all the powers and jurisdiction of justices of the peace." Const. Art. VI. § 13.

Justices of the peace, were at common law, subordinate magistrates, appointed by the king's special commission. They were conservators of the peace, and their judicial power referred to the administration of the criminal law. 1 Cooley's Blacks. 349. They were not clothed with civil jurisdiction ;

that is derived from legislative enactment or constitutional grant. *Marshal* v. *Betner*, 17 Ala. 832; *Ellis* v. *White*, 25 Ala. 540; *Williams* v. *Hinton*, 1 Ala. 297. When the Constitution of 1819 was formed, the Territorial Statute of 1814 (Laws of Ala. 510, § 1) conferred on justices jurisdiction of actions on contracts, when the amount in controversy did not exceed fifty dollars. A statute passed in 1829 conferred on them jurisdiction of actions on contracts for the payment of specific articles, or for the performance of services, when the amount in controversy did not exceed fifty dollars. Clay's Dig. 358, § 2. With the exception of the statute in reference to forcibly entry and detainer, and of special statutes, authorizing the recovery of penalties less than fifty dollars before justices of the peace, these statutes were the source of their civil jurisdiction until 1841. The test of this jurisdiction was, whether the action was in form *ex contractu* or *ex delicto*. If *ex delicto*, the justice had not jurisdiction. *Spann* v. *Boyd*, 2 Stew. 480. If the contract itself did not furnish the measure of the damages, or if the law operating on the contract did not fix the criterion, jurisdiction was excluded. *Cavender* v. *Funderburg*, 9 Port. 460. Of a purely equitable demand, if it exceeded twenty dollars, though less than fifty dollars, he had not jurisdiction. *Hall* v. *Cannte*, 22 Ala. 650. The true test of jurisdiction, as to the amount in controversy, was the amount actually due or claimed. *Crabtree* v. *Cliatt*, 22 Ala. 181. The statute of 1841 conferred on justices jurisdiction of actions for damages (except actions of slander), whether arising from tort or matter of contract, when the damages claimed did not exceed twenty dollars. Clay's Dig. 358, § 3. These statutes were substantially incorporated in the Code of 1852, and in all cases the jurisdiction extended to fifty dollars, without regard to the form or subject of the action; and jurisdiction of actions to recover specific property, the value of which did not exceed fifty dollars, was expressly given. Code of 1852, § 711. The Constitution of 1865, extending the limitation of civil jurisdiction to one hundred dollars, was not a grant of the jurisdiction *per se*. It was a mere authority to the general assembly to extend it, and until it was by legislative enactment extended, it remained as defined and regulated by the existing statutes. *Pearce* v. *Pope*, 42 Ala. 319. The act of February 20, 1866, now the first subdivision of § 841 of the Revised Code, increased the jurisdiction of justices in all actions founded on contract to one hundred dollars, leaving it in all other respects as it stood before the adoption of the Constitution.

The question presented by the record is, whether justices of the peace have jurisdiction of actions for the recovery of chat-

[Taylor *v.* Woods.]

tels *in specie*, the value of which, though exceeding fifty dollars, does not exceed one hundred dollars. The appellant insists the present Constitution, unlike the former constitutions, is an express, direct, immediate, grant of jurisdiction to justices in all civil causes wherein the amount in controversy does not exceed one hundred dollars, and in this respect varies from the former constitutions; that to clothe them with this jurisdiction legislation is not necessary, and legislation cannot narrow or circumscribe it. There is much force in the proposition; and the language of the Constitution, read by itself, and not in the light of the common law, or of former constitutions and existing statutes, would not only be capable of, but would admit of no other interpretation.

The Constitution is not the origin or beginning of law in the State. It was made by and for a people among whom the common law prevailed, so far as applicable to their condition, and not superseded or repealed by legislation or constitutional provision,— a people having a well defined, and well understood system of law, written and unwritten, statute and constitutional. It was not intended to abolish or destroy this system, and on its ruins raise up another, new and different. This system continues, except so far as it is repugnant to the Constitution, subject to such limitations and restrictions as it imposes. In the light of the former law and existing system, new constitutional provisions are to be read and interpreted, if their real meaning is ascertained, and the intent of the lawgiver carried into effect. Cooley Cons. Limit. 60; *People* v. *Draper*, 15 N. Y. 537; *Ex parte Roundtree*, June term, 1874.

The section of the present Constitution, in reference to justices of the peace and constables, if read by itself, without reference to its connection with, or dependence upon the former constitutions and preëxisting statutes, would require the election of these officers by the whole body of the electors in the county, and not by the electors of the several precincts or election districts, voting for two justices confined in a large measure in the exercise of jurisdiction; and a constable having authority within the precinct or district. Limiting the electors to voting for only two justices, and one constable, for the precinct or district of their residence, and not for all justices and constables within the county, is a statutory requirement and regulation that would be directly repugnant to the constitutional provision, that " a competent number of justices and constables should be elected in and for each county by the qualified electors thereof, who shall hold office during such terms as may be prescribed by law," if this was a new, original provision, introductive of officers in reference to which no former laws existed. When we read the provision in the light of for-

[Taylor *v.* Woods.]

mer constitutions and existing statutes, we cannot doubt as to its meaning. Former constitutions had not prescribed the mode of appointing or electing justices, and constables were purely statutory officers. The mode of election or appointment of either officer was a matter of legislative power, and could have been intrusted to the governor, reserved to the general assembly, or committed to any of the recognized agencies or judicial tribunals of the State or county. Or, as was done by the general assembly at its first session in 1819, transferred to the qualified electors residing within each captain's beat. Laws of Ala. 519, § 1. The policy of the present Constitution is, that all officers recognized in it shall derive their appointment from an election by the people among whom they are to exercise official power. In obedience to this policy, this provision, departing from former constitutions, makes an election the element of a justice's or constable's appointment. It was the element under the statutes. All the electors of the county are to have a voice in the election. They have it in electing the justices and constables of the districts in which they reside. Thus, the constitutional provision, interpreted in connection with the former constitutions and the statutes, is satisfied. The intention of its framers is fully accomplished, though the words in the larger and broader import they bear in other clauses, and which they would ordinarily receive, may not be observed. In their larger import the jurisdiction of the justice would be coextensive with the county : the place of residence of the defendant, or of the contracting of the debt, would not be material if it was within the county. The general law, from the earliest periods of our legislative history, has confined and now confines the jurisdiction to the precinct of the defendant's residence, or the precinct in which the debt was contracted. R. C. § 3209. This is upon the same policy that a defendant must be sued in the county of his residence.

Civil jurisdiction of a justice is not derived from the common law. It originates in, and depends upon constitutional warrant or statutory enactment. The jurisdiction in the present Constitution is "in all civil causes." So it was under the former constitutions. The term comprehends every cause which is not criminal. All causes, whether in equity or at law, had but two grand classifications, civil and criminal. The latter comprehends only violations of the criminal law, — causes at the common law, in which the crown, or with us the State, complains of violated law and broken peace, in which all individual right and interest are lost, and merged in the greater right and interest of the sovereign. Civil causes had parties, individual suitors, whose rights and wrongs were the matter of controversy. They embraced every action at law and every suit in equity, whether

[Taylor v. Woods.]

it sprung from contract or from tort; whether the form of action for the injury was *ex contractu* or *ex delicto*. If this clause of the Constitution is interpreted in the broadest meaning of its words, it would follow that justices had the jurisdiction of a court of equity, when the amount in controversy did not exceed one hundred dollars. They could enforce the specific performance or rescission of contracts, whether relating to land or personal property. The character of the equity involved would not be material. The amount involved would be the test of jurisdiction. So of every action for tort, though sounding in damages merely, of which the law has no standard, but leaves to the discretion of a jury, to be measured by the circumstances of each case, — if the amount claimed does not exceed one hundred dollars. Actions of slander, from jurisdiction of which they have always been excluded, would be embraced by the general words employed in the Constitution. Such a radical change in the legislation of the State, commencing in its territorial existence, is not to be inferred. It must be apparent from the force of the terms of the Constitution. No reason can be assigned for such a change. No mischief has resulted from the limitations placed by legislation on the jurisdiction of justices. Public convenience, the speedy collection of debts, not exceeding in amount one hundred dollars, it was supposed, would be promoted by the extension of jurisdiction in matters of contract. Therefore the Constitution of 1865 authorized the extension, and legislation put the jurisdiction in exercise as to the matters of contract. Then came the present Constitution, and its framers intending to express in it only that expressed in the former Constitution and the existing statutes, employed the general phrase, "all civil causes." We do not doubt they were employed for this purpose only, and not in the larger sense which would work a radical change in the law of the State from which no public mischief had resulted, but which is really promotive of the public good and of private interest. Actions for tort are invariably litigated, — the matter of vehement controversy between the parties. The judgment of the justice would but be a step in the litigation, conducting it to a higher tribunal. Litigation would not be quieted but protracted, and costs multiplied, by conferring the jurisdiction in such cases. This evil would be less probable and less frequently incurred, when the amount in controversy was small. Therefore the statute of 1841 confined the jurisdiction in actions for tort to twenty dollars, and subsequent legislation to fifty dollars, and beyond that sum it has never been extended. The true meaning of the Constitution is, that the civil jurisdiction of justices shall be limited to controversies involving an amount not exceeding one hundred dollars; that the general

assembly shall determine the class of cases in which it shall be extended to, or reduced below that point. It follows, under the present statutes, a justice has not jurisdiction of an action for the recovery of chattels *in specie*, when the value claimed exceeds fifty dollars. The ruling of the circuit court was, therefore, correct, and its judgment is affirmed.