# The State *v.* Birmingham So. Ry. Co.

## *Tax Proceedings.*

(Decided February 14, 1913. Rehearing denied March 24, 1913.
62 South. 77.)

1. *Constitutional Law; Distribution of Powers.*—So long as it does not exceed the constitutional limits, the legislative will is supreme, and must be obeyed by all the departments of the government.

2. *Same; Construction.*—Regard should be had to the nature and objects of the constitutional provisions, and not so much the form, in construing such provision.

2. *Same.*—A new constitutional provision adopted by a people already having well defined institutions and systems should not be construed as abolishing such systems, except in so far as manifestly repugnant to the new provisions, but such provision should be read in the light of former law and existing system.

4. *Same.*—Constitutional provisions designed for the preservation and security of the elementary rights of life, liberty and property, should be liberally construed in favor of the citizens as being in accord with the genius of our institutions. 'When it is clear that a statute oversteps such limits it should be declared null and void, but where the act complained of prescribes some rule of purely governmental policy, or relates merely to the conduct and administration of public affairs, it will not be declared unconstitutional unless it infringes upon some provision which prohibits it by express negation, or necessary implication.

5. *Same; Statutes; Construction.*—All doubts will be resolved in favor of the constitutionality of the statute, and the burden is on one attacking its constitutionality to demonstrate beyond a reasonable doubt that it is repugnant to the organic law.

6. *Taxation; Power.*—The power to tax is an incident of sovereignty and is possessed by the government without being expressly conferred by the people.

7. *Same; Nature.*—The power to tax is purely legislative.

8. *Same; Constitutional Intervention; Construction.*—Section 221, Constitution 1901, was designed to secure equality and uniformity, but does not require that all property must be taxed, nor does it prohibit exemption from taxation, or such classifications as are not arbitrary or capricious; consequently, the inhibition of section 211, has no effect upon Acts 1911, p. 185, sec. 36-a, providing taxes to be computed on a basis of 60 % of the real value of taxable property.

9. *Same; Assessment.*—Section 36-a, Acts 1911, p. 185, is not violative of section 260, Constitution 1901, for the expression "taxable property" as used in the Constitution and in section 2082, Code 1907, and in the Revenue Act itself merely refers to property which the

[The State v. Birmingham So. Ry. Co.]

Legislature has not constitutionally exempted from taxation, and cannot be accepted as a broad, general classification of all property upon which it was intended that the levy should be assessed, and while the provision in question would prevent the Legislature from assessing property at more than its actual value, it does not particularly inhibit the Legislature from directing assessment to be made at less than actual value. This construction is strengthened by the fact that in no place does the Constitution require the Legislature to do any affirmative act towards assessing taxes, and without such action on the part of the Legislature no taxes could be levied.

10. *Same.*—Nor does section 36-a, Acts 1911, violate the provisions of section 211, Code 1907, in its second clause added by way of. amendment in the present Constitution, as the purpose of this section is merely to prevent double taxation by imposing a tax upon the income of property where the property itself had been assessed at its full value, as an assessment at full value was had when the property was assessed at a value prescribed by law.

11. *Same.*—Nor does section 181, Constitution 1901, render section 36-a, Acts 1911, p. 185, invalid, as it must be presumed that this provision was adopted with knowledge of the low schedule of valuation prevalent throughout the state, nor does the statute inhibit taxing officers from permitting owners of property to have it assessed at its true value.

12. *Same; Exemptions; Power of Legislature.*—The power of the Legislature to exempt from taxation is untrammeled and it can exempt any class of property from taxation, and consequently it may exempt a certain per cent of all taxable-property by providing that taxes shall be assessed at 60% of the actual value of the property.

(Mayfield and Sayre, JJ., dissent.)

APPEAL from Birmingham City Court.

Heard before Hon. C. C. NESMITH.

In the matter of the Birmingham Southern Railway Company. The railroad company having returned its property to the board of assessment, and the board of assessment having raised its assessment, the railroad company appealed to the Birmingham City Court, where there was judgment sustaining demurrers to the complaint filed by the state, from which judgment the state appeals. Affirmed.

The state board of assessment assessed the property of the appellee at a valuation of $1,990,682, and appellee appealed from its action to the city court of Birmingham. In that court, the whole question of valuation being triable de novo, the state filed a complaint

averring that the fair and reasonable cash value of the property in question was $2,750,000, and asking that that valuation be fixed by the court as a basis for taxation. The sixth count of the complaint avers that appellee assessed its property at $1,476,000 "which was 60% of its fair and reasonable valuation." Appellee demurred to the complaint on the ground that it attempted to assess its property at its fair and reasonable actual value, instead of at 60% of its value as provided by law. This demurrer was sustained by the court, and the state declining to plead further, judgment was rendered denying the relief declared for and as charging appellee with its costs.

R. C. BRICKELL, Attorney General, W. L. MARTIN, Assistant Attorney General, R. B. EVINS, and STALLINGS & DRENNEN, for the State. In determining that the contention of the state is proper it is necessary to consider only section 260, Constitution 1901, section 2082, Code 1907, and section 36-a, Acts 1911, p. 185, and *Assessment Board v. A. & C. R. Co.,* 59 Ala. 551. Section 36-a is unconstitutional because it effects the wholesale and unwarranted exemption of property heretofore unknown to the law.—Cooley on Taxation, p. 343; 16 Mich. 276; *Swann v. State,* 77 Ala. 547; *Dabahnar v. Kennerly,* 74 Ala. 589. Such section contravenes the basic principle that taxes shall be uniform and equal. —*Dorman v. State,* 34 Ala. 229; *State Auditor v. Jefferson County,* 65 Ala. 166; *Edwards v. Williamson,* 7 Ala. 153; *Perry County v. R. R. Co.,* 58 Ala. 564. Said section is repugnant to and incompatible with the intention of the Constitution.—*Hare v. Kennerly,* 83 Ala. 611; *Mayor v. Stonewall I. Co.,* 53 Ala. 577; *W. U. T. Co. v. State,* 80 Ala. 275; *Perry County v. R. R. Co., supra; Elyton L. Co. v. Birmingham,* 89 Ala. 478; 100

U. S. 584; 33 Pac. 642; 59 N. W. 793; *McGuire v. Board
of Revenue,* 71 Ala. 421; *Schultes v. Eberly,* 82 Ala.
243; *Phoenix I. Co. v. Fire Dept.,* 117 Ala. 651.  Said
act neutralizes the primary object of all taxation, the
support of the government, is against the public policy
of the state and subversive of its best interests.—Secs.
211, 214-5-6, 219, 224-5 and 260, 181, Constitution 1901,
and authorities supra.

PERCY, BENNERS & BURR, for appellee.  The purposes
of the act under fire are well illustrated, and upheld by
the *State Board of Assessment v. Alabama Central Ry.
Co.,* 59 Ala. 557; *Smith v. County Commissioners,* 117
Ala. 196.  Under these authorities, section 211 of the
Constitution is not violated by the provisions of the
act in question.—*Mobile v. Stonewall I. Co.,* 53 Ala.
576; *Capital C. W. Co. v. Board of Revenue,* 117 Ala.
307; *W. U. T. Co. v. State Board,* 80 Ala. 274; 59 N̄.
E. 793; 85 Fed. 315; 24 S. E. 1005; 123 S. W. 755; 120
S. W. 853.  There is no limitation to the sovereign pow-
er of the General Assembly, except the express nega-
tion or necessary implication contained in the organic
law, and hence, this court cannot strike down an act
because assumed to be against the public policy of the
state, and subversive of its interests.—*Mayor of Bir-
mingham v. Klein,* 89 Ala. 465; *So. Ry. v. St. Clair Co.,*
124 Ala. 493; *Moog v. Randolph,* 77 Ala. 597; *Winter
v. City of Montgomery,* 65 Ala. 413.  The act is not
violative of section 260 of the Constitution.—*W. U.
T. v. State Board, supra.*

SOMERVILLE, J.—To quote from the brief of coun-
sel for appellant:  "The question at issue is whether
the Legislature has the right, under the provisions of
the Constitution of this state, to fix by enactment the

taxes on taxable property at 60 per cent. of the real value, as was attempted to be done by section 36A, p. 185, of the acts of the Legislature of 1911." The language of that section is: "The taxable property within this state shall be assessed, for the purpose of taxation, at sixty per cent. of its fair and reasonable cash value." The constitutionality of this provision must be considered in the light of the following well-established principles:

(1) The power of taxation is an incident of sovereignty and is possessed by the government without being expressly conferred by the people.

(2) The power is purely legislative.

(3) So long as no constitutional limitations are exceeded, the Legislature is of supreme authority, and the courts, as well as all others, must obey.—*Schultes v. Eberly*, 82 Ala. 242, 243, 2 South. 345; *Hare v. Kennerly*, 83 Ala. 608, 3 South. 683; *Phoenix Carpet Co. v. State*, 118 Ala. 143, 151, 22 South. 627, 72 Am. St. Rep. 143; 1 Cooley on Constitutional Limitations, pp. 7, 9, 49.

If the legislative provision in question is unconstitutional, it must be because it is repugnant to one or more of the following sections of the state Constitution:

Section 211: "All taxes levied on property in this state shall be assessed in exact proportion to the value of such property, but no tax shall be assessed upon any debt for rent or hire of real or personal property, while owned by the landlord or hirer during the current year of such rental or hire, if such real or personal property be assessed at its full value."

Section 214: "The Legislature shall not have the power to levy in any one year a greater rate of taxation than sixty-five one-hundredths of one per centum on the value of the taxable property within this state."

Section 260: "The income arising from the sixteenth section trust fund, etc., etc., together with a special annual tax of thirty cents on each one hundred dollars of taxable property,  \*  \*  \*  which the Legislature shall levy, shall be applied to the support and maintenance of the public schools:  \*  \*  \*  Provided, that nothing herein contained shall be so construed as to authorize the Legislature to levy in any one year a greater rate of state taxation for all purposes, including schools, than sixty-five cents on each one hundred dollars' worth of taxable property.  \*  \*  \*""

Section 181—(prescribing who shall be qualified to register as electors, and including): "The owner in good faith in his own right, or the husband of any woman who is the owner in good faith, in her own right, \*  \*  \*  of real estate situate in this state, assessed for taxation at the value of three hundred dollars or more, or  \*  \*  \*" (repeating the same conditions as to personal property).

Section 211 of the present Constitution had its origin in a provision first found in the Constitution of 1819: "All lands liable to taxation in this state, shall be taxed in proportion to their value." This rule, preserved in all succeeding Constitutions, was extended to personal property and incorporated in the Constitution of 1868 in the following language: "All taxes, levied on property in this state, shall be assessed in exact proportion to the value of such property." And so it has been preserved unchanged in the two succeeding Constitutions of 1875 and 1901. The purpose and scope of this constitutional limitation upon the taxing power has been frequently considered by this court, and the substance of our decisions is that it was designed to secure uniformity and equality by the enforcement of an ad valorem system of taxation and to prohibit arbi-

[The State v. Birmingham So. Ry. Co.]

trary or capricious modes of taxation without regard to value.—*Moog v. Randolph,* 77 Ala. 597, 602; *W. U. Tel. Co. v. State Board, etc.,* 80 Ala. 273, 275, 60 Am. Rep. 99; *Assessment Board v. A. C. R. R. Co.,* 59 Ala. 551; *Mayor of Mobile v. Stonewall Ins. Co.; 53 Ala.* 570. This does not mean that all property must be taxed.—*Moog v. Randolph, supra; State Bank v. Board of Revenue,* 91 Ala. 217, 223, 8 South. 852. Nor does it prohibit exemptions from taxation or such classifications of property as are not purely arbitrary, capricious, or without the semblance of reason.—*Moog v. Randolph, supra.* It does, however, prohibit the Legislature from prescribing or declaring an arbitrary or artificial value of the property of individuals or corporations, and assessing taxes on such valuation.—*Assessment Board v. A. C. R. R. Co., supra.* It is perfectly clear that there is nothing expressed or implied in the language of this limitation which prohibits the Legislature from fixing as a basis for taxation any percentage of the actual value of property, whether greater or less than 100 per cent. thereof, provided only that such rule is applied without discrimination to all property of the same nature.

It is equally clear, however, that section 214, which limits the *rate* of taxation to .65 of 1 per centum on the value of taxable property, does, by necessary implication, forbid a legislative basis of assessment in excess of 100 per cent. of the value of the property, for otherwise the express limitation on the rate might be made wholly ineffectual by the simple legislative device of an excessive valuation of the property.

The Supreme Court of Illinois has given very thorough consideration to this subject. Under a constitutional provision that all persons should pay a tax in proportion to the value of their property, the Legisla-

ture enacted a statute requiring assessors to ascertain and set down the fair cash value of property and to apportion and compute all taxes upon *one-fifth* of such valuation. The statutes was held not violative of the Constitution, and the court said: "But it is urged by counsel for appellants that the word 'value,' used in the Constitution, must mean actual value; that any attempt of the Legislature to direct assessing officers to take one-fifth of such value as the assessed value is void; and that, inasmuch as the statute provides for a determination of such actual value, it must be held to be a basis of the limitation. The central and dominant idea of the Constitution in the assessment of property for taxation and in the payment of taxes is uniformity and equality; but we find no provision which prevents the Legislature from fixing the assessed value at less than full value. Justice and uniformity between taxpayers may be as well secured by a proportionate basis, and, while the value cannot be fixed by the Legislature, it is within the legislative power to enforce the provision for uniformity by any proportional rule. Assessors had always assessed property at a part only of the full value, and we see no reason why the Legislature may not prevent the varying methods by which property was assessed unequally between different counties and municipalities of the state by enforcing a fixed and uniform rule. So long as the correct proportion between the different subjects of taxation is maintained, there is no language of the Constitution which limits the legislative power to prescribe a basis for the action of the assessors."—*City of Chicago v. Fishburn*, 189 Ill. 367, 377, 59 N. E. 791, 793.

Similar legislation under similar provisions of the Constitutions of Tennessee, Nebraska, and West Virginia has been held to be valid.—*Railroad & Telephone*

*Companies v. Board of Equalizers* (C. C.) 85 Fed. 315;
*State ex rel. Young v. Osborn, Assessor,* 60 Neb. 415,
83 N. W. 357; *C. & S. Bridge Co. v. Kanawha County
Ct.,* 41 W. Va. 658, 24 S. E. 1005. See, also, *Lively v.
M., K. & T. Ry. Co.,* 102 Tex. 545, 120 S. W. 852. We
believe that no court has ever taken a contrary view.

Our conclusion is that, so far as sections 211 and
214 of the Constitution are concerned, the Legislature
may prescribe as a basis for the levy of the general
state tax of .65 of 1 per centum any percentage of the
actual value of taxable property which it may deem
expedient, not in excess of 100 per cent. thereof.

Section 260 of the present Constitution, as quoted
above, is an imperative mandate to the Legislature to
levy for the support of the public schools of the state
"a special annual tax of 30 cents on each $100 of tax-
able property," and expressly reduces the total maxi-
mum rate of .65 of 1 per centum, as fixed by section
214, to .35 of 1 per centum for all other public purposes.
This constitutional mandate has been executed by the
enactment of subdivision "a" of section 2082, Code of
1907, which reads: "There is hereby levied for the
purposes named, upon the property hereinafter named,
in lieu of all taxes heretofore levied, annual taxes as
follows, to wit: (a) For the maintenance of the pub-
lic schools of the state, thirty cents on each hundred
dollars of the assessed valuation of taxable property;
(b)  *  *  *;  (c)  *  *  *."

We agree with counsel for the state that the phrase
"taxable property," as repeatedly used in the several
sections of the Constitution and of the Code relative to
taxation, means, and can only mean, *property which the*
Legislature *has not constitutionally exempted from tax-
ation.* It is clearly so used in section 36A of the rev-
enue act itself, and hence it would be a palpable contra-

diction of its terms to say that by that section the Legislature undertook to exercise its undoubted power to exempt property from taxation. So there is here no question of such an exemption. Section 260 contains no express inhibition upon the legislative power to adopt such a percentage of valuation for assessment as it may deem expedient. Does it inhibit that power by necessary implication? Or, to expand the question to its full significance, is it the clear purpose of that provision to prescribe and provide an approximately fixed amount (as distinguished from rate) of revenue for the support of the public schools; and, if so, is that purpose clearly inconsistent with the legislative power to indirectly and incidentally reduce its amount by the adoption of a reduced percentage of valuation for assessment? Was the quantum of the levy, as here commanded, fixed with a view to assessments made upon the statutory basis of full, actual value, as consistently maintained in this state ever since it was first definitely established by section 391 of the Code of 1852; or was it fixed with a view to assessments made upon partial valuations ranging in practice, as common knowledge must have informed the Constitution makers, between 10 and 100 per cent. of actual value, and averaging perhaps less than 50 per cent.; and in contemplation of the perpetuation of such assessments either by general local practice or by future legislative sanction? The gist of the argument for the taxpayer is that this special tax was created wholly without reference to any scheme of valuation for assessments, and that the *rate* thus fixed was intended to be applied to values as actually assessed upon whatever percentage of value the Legislature might in its discretion prescribe; that the intention was merely to set aside for public school education a fixed proportion of the general revenue of

[The State v. Birmingham So. Ry. Co.]

the state; and that, if there had been any intention to limit the Legislature to assessment based upon *actual* value, it could and would have been easily expressed by language appropriate to that end.

For the state it is argued, on the other hand, that the Constitution does not merely set aside a fixed proportion of the general revenue for the support of the public schools, but in fact provides for a distinct and independent tax in that behalf; that it was intended to fix a limitation *downward* as well as upward; and that the theory of a limitation downward is wholly inconsistent with the retention of the legislative power to prescribe as a basis for assessment any scheme of valuation other than the actual value of the property, for it is urged, the power to limit the assessment to 60 per centum of the actual value necessarily assumes the power to limit it also to 50, 40, 20, or even *1* per centum, and thus to actually nullify the levy completely for all practical purposes. It must be conceded that these arguments are both weighty and forcible; so much so, indeed, that they might well perplex the wisdom and divide the counsels of the bench in the ascertainment of the general constitutional intent, as manifested by the several provisions germane to the present inquiry.

We have given very full and earnest consideration to the merits of the controversy as above impartially outlined, and we are not convinced that any of the constitutional provisions above quoted are so clearly repugnant to the legislative power exercised in the enactment of section 36A of the revenue act as to authorize the sentence of judicial nullification here invoked by the state. We will state some of our reasons for this conclusion:

[The State v. Birmingham So. Ry. Co.]

(1) While the makers of the new Constitution knew that the actual value of property had been the nominal *statutory* basis for assessments since the adoption of the Code of 1852, they must have known also (what all intelligent people know) that in practice assessed values have rarely exceeded 60 to 75 per cent. of actual values, and that the total average of assessed values has rarely, if ever, exceeded 50 per cent. of actual values. Hence they knew the impotence of legislation to achieve, except by graduated progress, the ideal of assessments at actual values.

(2) Knowing these things, as we must assume they did, they must have understood and appreciated the gross inequalities resulting from the practices in this regard prevailing throughout the state; inequalities not merely between different localities, but between taxpayers in the same locality. And we may further assume that they understood, what we believe must be apparent to every student of the subject, that the only rational and practicable method of *equalizing* taxation between localities and between individuals would be by the general approximation of some *attainable level* of valuations. And of course they knew that the very key-note sounding through the tax provisions of the Constitution is equality, as nearly as it is practically attainable, and security against excessive taxation.

(3) Under these conditions, when they prescribed the levy of the special school tax they could not have anticipated that it would *yield* anything like 30 cents on every $100 of taxable property, and must have known that it would in fact yield scarcely more than half such an amount. The Legislature had never shown any disposition to reduce tax revenues by minimizing assessment valuations, but quite the contrary, and that was an evil (if it may be so termed) neither existing in fact

nor apparently to be feared in the future, especially in view of the patent fact that the general tax revenues of the state, without which it could not exercise its governmental functions, would always necessarily depend upon a basis of substantial and adequate property valuations.

(4) Although the phraseology used in fixing the school tax rate in section 260 is different from that use in fixing the maximum general rate in section 214, we see in the change no more than the adoption of a simpler and more direct method of expressing *the rate* intended to be fixed. If it had been intended to do more than fix the rate, viz., to perpetuate its levy upon the hitherto unattained basis of assessment at actual values, and to abrogate and destroy the undoubted power of the Legislature to equalize taxation upon any lower level, the expression of such a purpose would have been natural, and its accomplishment easy, by the interjection of a simple phrase. It may be argued that, if it was intended that the fixed rate should be levied upon property only as it might be required to be assessed by law, it would have been equally easy and natural to have expressed that qualification. The difference, however, lies in the nature of the qualifications in question; and, while it would be natural to express a designed limitation upon sovereign power, it is not at all needful to express an affirmance of the power itself when incidentally concerned.

(5) While the assessment of property is an indispensable element to the fruitage of any levy upon a per centum rate, and the basis for assesssment valuations will in a measure control its yield of revenue, there was with respect to the school tax levy, as we have already stated, no practical possibility of its defeat or substantial impairment by any legislative reduction of such

valuations. So far as we are advised, history records no instance of a people groaning under the evils of undertaxation, nor do we apprehend that the framers of any constitution have ever been confronted by the necessity of stimulating the duty or the diligence of the Legislature in the levy of taxes. On the other hand, the evils of excessive taxation have constantly demanded and received the watchful care and the restraining power of the people in the framing of their organic law. These considerations strongly tend to confirm the view that the emphasis in section 260 is upon the *rate* rather than upon the basis of the assessment, and that the intended result of the whole section is merely to require the appropriation to education of 30 cents of the 65 cents maximum tax allowed by section 214 for all purposes, and to require a levy of at least that much, and that such levy should be applied to such assessed valuations as the wisdom of the Legislature might prescribe and the diligence of assessment officers might secure.

(6) Had it been intended to limit and control the Legislature in respect to the mode of assessing values, the natural, and certainly the most proper, place to express that purpose would have been in section 211 or section 214. The failure to do so would seem to indicate the total inadvertence of the Constitution makers to such a proposition. Certainly they must have designedly omitted to use the language customarily adopted in statutes and constitutions for such a purpose, as witness our own former statutes, and the Constitutions of Michigan, Nevada, New Jersey, North Dakota, and South Carolina, as quoted in 1 Cooley on Taxation (2d Ed.)

It remains now to consider the second clause of section 211 and the property qualification clause of section 181, which have been referred to as germane to our inquiry.

[The State v. Birmingham So. Ry. Co.]

The second clause of section 211, added to that sec-
tion by amendment in the present Constitution, forbids
the separate taxation of the rent or hire of property
where its owner has assessed the property itself "at its
full value." This was very evidently written in the
light of the statutory requirements for valuation as
then existing, and its clear purpose was to exempt such
income from legislative selection for taxation when the
property itself was already bearing the full burden of
taxation imposed upon it by law. In other words, the
controlling purpose was merely to prevent *double taxa-
tion.* Its achievement is complete when the property
is assessed at its full value as that fullness is prescrib-
ed by law.

Nor do we find in the language of section 181 any
purpose to restrict legislative power with respect to as-
sessments. The suffrage qualification there prescribed
is the ownership of property *"assessed* for taxation at
the value of three hundred dollars or more," and there
is a manifest disregard for an actual value test. This
provision was adopted, we must assume, with a full
understanding of the low scale of valuations prevalent
throughout the state, and in plain view of the evident
fact that electors who owned $300 worth of property
could establish their qualifications only by assessing it
at twice or thrice the proportionate values given in by
or imposed upon their more opulent neighbors. The in-
equality is not aggravated by the legal adoption of an
assessment valuation in excess of that in actual use.
Moreover, there can be no doubt but that the 60 per
cent. basis for assessment is intended to be a restric-
tion upon assessment officers, and not upon property
owners who may insist upon assessing their property
at its actual value. But, whether those officers per-
mit an assessment on actual valuation or make it on the

statutory percentage, it is the *assessed* valuation that controls.

Recurring to the general merits of the question under consideration, we suggest a line of reasoning which is, we believe, of controlling force. It is thoroughly well settled that the Legislature has the power to exempt from taxation any kinds or classes of property at its discretion, if not constitutionally restrained therefrom. —37 Cyc. 738-740. Our Constitution imposes no restraint in this particular, except as to uniformity and equality.—*Moog v. Randolph,* 77 Ala. 597; *Phoenix Carpet Co. v. State,* 118 Ala. 143, 22 South. 627, 72 Am. St. Rep. 143; *Mayor of Mobile v. Stonewall Ins. Co.,* 53 Ala. 570. In fact wherever the Constitution provides for the levy of a tax, it is expressly limited to "taxable property," which means, as we have already pointed out, property not lawfully exempted from taxation. This power is unreservedly conceded by counsel for the state. It includes, of course, the power to select for taxation only *real estate,* with a resulting exemption of personalty, and vice versa.—37 Cyc. 740, and cases cited. And, if *either* class may be exempted, it cannot be denied that *both* may be exempted. And, if both are exempted, what becomes of the general tax, and what becomes of the special school tax? And, it may be pertinently asked, what becomes of the state? This demonstrates to a certainty that, so far as *mere power* is concerned, the Constitution has left in the Legislature the absolute power to nullify all taxation and to destroy all tax revenues. That such a power is left untouched and unrestrained is clearly and radically inconsistent with the theory that any of the quoted sections of the Constitution aimed at the abrogation of legislative freedom in dealing with the mere matter of valuation, for that the framers of the Constitution

would have cautiously and suspiciously designed to close one door, while leaving others wide open, is beyond the range of rational conception. The truth is, we conceive, that then, as always, they trusted something to the honor and patriotism of the Legislatures of the state, and were content that their levy for the public schools should stand upon the same general basis of valuations as would the general levies, without any fear of substantial impairment resulting from a just equalization of assessments.

We are supported in our conclusion by the general principles of constitutional construction heretofore declared by this court. Rules of statutory construction are of limited application in the construction of the Constitution. The safe rule of constitutional construction is to regard not so much the form or manner of expression as the nature and objects of its provisions, and the end to be accomplished, giving its words their just and legitimate meaning.—*Carroll v. State,* 58 Ala. 396.

A new constitutional provision adopted by a people already having well-defined institutions and systems of law must not be construed as intending to abolish the former system, except in so far as it is in manifest repugnance to the new Constitution; and, in determining the real scope and meaning of the new provision, it must be read in the light of the former law and the existing system.—*Taylor v. Woods,* 52 Ala. 474. New provisions, having their origin in larger experience, introduced into an amended or revised Constitution, are to be construed and allowed such operation as will secure the purposes for which they were introduced; and these purposes are to be ascertained from a just consideration of the causes in which they originate.—*Mayor of Mobile v. Stonewall Ins. Co.,* 53 Ala. 570, 577.

Constitutional provisions, designed for the preservation and security of the elementary rights of life, liberty, and property, should be construed liberally in favor of the citizen as being in accord with the genius of our institutions and the traditions of the English race. See *Dorman v. State,* 34 Ala. 216; *Sadler v. Langham,* 34 Ala. 311. Whenever it is *clear* that the Legislature has overstepped such limitation, its action should be declared null and void.—*Sadler v. Langham,* 34 Ala. 311, 322. On the other hand, where the legislative act complained of prescribes some rule of purely governmental policy, or relates merely to the conduct and administration of public affairs, it ought not to be declared unconstitutional unless there is some constitutional provision which forbids it by express negation, or by necessary implication.—Cooley on Const. Lim. C. 7, § 6; *Commonwealth v. Moir,* 199 Pa. 534, 49 Atl. 351, 53 L. R. A. 837, 85 Am. St. Rep. 801. Or, as declared by this court, unless it is repugnant to the organic law, "beyond a reasonable doubt."—*State ex rel. Meyer v. Greene,* 154 Ala. 249, 254, 46 South. 268, 270. Or "clearly, decisively, and unavoidably  *  *  *  without the power of the Legislature."—*City of Ensley v. Simpson,* 166 Ala. 366, 375, 52 South. 61, 64.

We think we have said enough to demonstrate that the alleged excess of legislative power in the enactment of the law in question is at least too doubtful to justify us in pronouncing it unconstitutional, for, as said by Chief Justice Sharswood, "to doubt is to be resolved in favor of the constitutionality of the act."—*Commonwealth v. Butler,* 99 Pa. 535.

Let the judgment be affirmed.

Affirmed. All the Justices concur, except DE GRAFFENRIED, J., not sitting.

[The State v. Birmingham So. Ry. Co.]

ON REHEARING.

DOWDELL, C. J., and ANDERSON, MCCLELLAN, and
SOMERVILLE, JJ., concur in the original opinion and
conclusion.

SAYRE, J.—(dissenting).—The importance of the
question presented is such that I prefer to make a brief
statement of the reasons for my dissent, though I am
well aware of the unprofitable nature of such expres-
sion in cases generally. The Constitution (section
260) provides that "a special annual tax of thirty
cents on each one hundred dollars of taxable property
in this state, which the Legislature shall levy, shall be
applied to the support and maintenance of the public
schools." The act in question authorizes that each $100
worth of property be assessed at 60 per centum of its
worth, and thereby reduces the special school tax to 30
cents on each $60 of taxable property, instead of the
constitutional 30 cents on each $100. On whatever
basis or theory of values the levy of taxes proceeds, a
par value, a 100 per centum value, must be ascertained
and fixed. No argument is needed to show that a 60
per centum value cannot be ascertained without first
fixing the 100 per centum value. That is a mere mat-
ter of the simplest sort of arithmetic. And this par
value is fixed for the purposes of taxation. It fixes the
taxable value of property. If the Legislature saw fit
to fix an arbitrary and artificial assessment of 60 per
centum, in the absence of a minimum limitation in the
Constitution, no individual taxpayer could complain.
The only practical effect of such a system would be to
lower the rate of taxation. But, if the Legislature
should levy the maximum constitutional tax upon all
property to be assessed at 200 per centum of its taxa-

ble value, there would be just cause of complaint that the Legislature had by a patently unconstitutional device doubled the maximum limit of taxation in plain violation of the mandate of the Constitution. Now the Constitution of this state, by a provision which is peculiar to it among constitutions, has required the Legislature to levy a special annual tax of 30 cents on each $100 of taxable property in this state for the support and maintenance of the public schools. The judgment and command of the framers of the Constitution and of the people in adopting it was that the public schools should always have at least the funds to be raised by "a special annual tax of thirty cents on each one hundred dollars of taxable property in this state"; that is, of property not specifically exempted from taxation. The majority opinion avers that there is here no question of exemption. But it nevertheless effectually exempts from taxation, not specific property, but 40 per centum of all the property in the state, and of this public schools and their corporate representative, the state, have a right to complain.

In my opinion, after some independent investigation of the subject, the court has failed in the application of that cardinal principle which excludes construction where the language used is plain and unambiguous and there is nothing to construe. The principle was expressed by this court in *State ex rel. Little v. Foster,* 130 Ala. 162, 30 South. 479, as follows: "It [the constitutional provision there under consideration] is plain and unambiguous, and, where this is the case, the framers of the Constitution 'should be intended to mean what they have plainly expressed, and consequently no room is left for construction. Possible, or even probable, meanings, when one is plainly declared in the instrument itself, the courts are not at liberty to search for

elsewhere.'—Cooley's Cons. Lim. 69, 70. The framers of the Constitution 'must be understood to have intended what they said.  *  *  * We can only learn what they intended from what they have said. It is theirs to command, ours to obey. When their language is plain, no discretion is left to us. We have no right to stray into the mazes of conjecture or to search for imaginary purposes.' "—*State v. McGough,* 118 Ala. 166, 24 South. 397.

The concurrences noted on the record will show that at first I concurred in the very learned and astutely written opinion of the majority. Though doubting, I concurred on Chief Justice Sharswood's principle that "to doubt is to be resolved in favor of the constitutionality of the act." I have now only to say that on reflection my mind rejects the subtleties which led me to doubt the meaning of the Constitution. I am now of the opinion that the provision of the act in question is clearly, decisively, and unavoidably without the power of the Legislature. In saying this I am not unmindful of the fact that this court has no power to compel the Legislature to change its manner of dealing with the subject of taxation. But the Legislature, no more than any other department of government, has a right to prescribe rules of governmental policy or to regulate the conduct and administration of public affairs in opposition to plain mandates of the Constitution. This court can, however, declare the unconstitutionality of the act, leaving the consequences to be cared for elsewhere and that, in my opinion, it ought to do in this case.

MAYFIELD, J.—(dissenting).—I fully concur in all that is said by Justice SAYRE, but desire to add the following:

The basic error in the majority opinion is in treating section 260 of the Constitution as a maximum limitation only, upon the power of taxation, when it is in truth and in fact both a minimum and a maximum limitation. It should be observed that this section is not a part of the article on taxation. It is a part of the article on education. It merely incidentally refers to the article on taxation and the maximum limitation therein so as to make it clear it is to be included, and not excluded, in fixing the maximum rate of 65 cents. It is made fixed and certain; it must be always at the rate of "thirty cents on each hundred dollars of taxable property," *no more and no less.* The Legislature may divide up and apportion the other general tax of 35 cents at pleasure, and may diminish it and fix it at any amount less than 35 cents, but at no amount greater. As to this 30 cents special school tax, it is by the Constitution itself made fixed and certain, and cannot be increased or diminished by the Legislature nor applied to any other purpose than the public schools; and it must be kept separate and apart from other funds.

The sum and substance of the majority opinion, so far as concerns section 260 of the Constitution, is that its only effect is to say that 30/65, or 6/13, of the revenue raised by general ad valorem taxation shall be applied to the public school fund; that this, in substance, is all that it means. If this theory were true, or if I could believe or even conceive it to be doubtful, I could readily concur in the conclusion of the majority. It is admitted, and it cannot be denied, that this is not what is said in section 260. If this was what was meant, why was it not said in plain English? It would have been much easier than to say what was said in plain English. The article of the Constitution of

which section 260 forms a part creates a "public school fund," separates it from other public funds, and says in plain English that one part, or element, of this special fund shall be "a special (not a part of the general) tax of thirty cents on each hundred dollars of taxable property." The rate is thereby fixed by the Constitution at 30 cents on each $100 worth of taxable property, and the tax is in terms made a "special" one and not a part of the general tax as the majority opinion treats it. This tax being thus made a *special one* by the Constitution itself, it never is, and never can be, constitutionally made a part of the general fund by the Legislature. How can it be treated as a part of the *general fund* when the Constitution says in terms that it is a "special tax" and provides repeatedly that it shall be kept separate both from the general fund and from other special funds? The majority opinion entirely overlooks or ignores these express provisions and commands of the written constitution.

Justice SAYRE has shown in his opinion the error, if not the folly, of trying to justify the statute upon the ground of making a distinction between the "assessed" and the "actual" value of property. The statute is not so framed or worded as that it could possibly make any difference whether the Constitution makers meant "assessed" or "real" value. Justice SAYRE has well shown this. But if we should concede, for the sake of argument, or of the majority opinion, that the Constitution makers, in using the word "value," meant "assessed value," as distinguished from "real" or "actual value," the pertinent question arises: If they so meant, why did they not say so, as they did in other sections, when they meant to distinguish the "assessed" value from the "actual" value?

In section 181 of the Constitution it was thought necessary, or deemed proper, to distinguish between "assessed" value and "real" value; and the Constitution makers distinguished in no uncertain language. In fact, they did so in terms. They there said that a man and a resident who owns in good faith real estate "assessed" for taxation at the value of $300 or more shall have the right to vote, notwithstanding he may be otherwise disqualified. Here a difference between the "assesssed" and the "real" value was recognized and provided for.

If any difference between the "assessed" and the "real" value was contemplated in section 260, would not the Constitution makers have used the language, or language, similar to that employed in section 181? If they recognized the difference in some cases, and clearly indicated which they meant, is it not reasonable to suppose that, if they recognized or meant any difference in section 260, they would have said so, as they did in all other instances where the word "value" is used? But, as Justice SAYRE has well and conclusively shown, so far as the statute in question is concerned, it is wholly immaterial whether there be a difference or not, or, if there is, which is meant, because, as this statute is construed, the "assessed" value and the "real" value are the same. "Things that are equal to the same thing are equal to each other." The statute says in terms that the property shall be assessed at 60 per cent. of its "fair and reasonable cash value." In other words, the statute does not contemplate that the property has two different values, one the "assessed," and the other the "real"; but it in terms contemplates only one value, the "fair and reasonable cash value," which is only the 'real" value, and then provides that taxable

[The State v. Birmingham So. Ry. Co.]

property shall be assesssed at 60 per cent. of this "actual" value.

I do not think it can be doubted that the Legislature, in speaking of "the fair and reasonable market value," meant its "real" or "actual" value. This is placed beyond dispute, because it says that property shall be assessed at 60 per cent. of this value, and not at such per cent. of some fictitious or "assessed" value. The entity or unit here referred to is, and can be nothing different from, the actual value of the taxable property. As Justice SAYRE says, before you can ascertain what 60 per cent. of this unit is, you must first know what the unit is. While the statute does not say so in terms, it does, in substance and sense, say that the maximum rate of taxation in this state shall be 39 cents on each $100 worth of taxable propery; or, what is the same thing, that it shall be 65 cents on each $180 worth of taxable property.

So far as concerns the general tax (that is, the 35 cents on each $100 worth of property), I see no constitutional objection to the statute, and as taxation is one, if not the king or prince, of the inherent powers of the Legislature, there can be no other objection for the consideration of the courts. Its wisdom, policy, or propriety does not concern the courts; if not prohibited by the Constitutions, state or federal, it is necessarily valid if properly enacted, and no question is here raised as to the mode of enactment.

But, as to this special tax of 30 cents for public schools, I am equally and as firmly persuaded that the statute cannot be made to apply, and that the only way to uphold the statute (which it is our duty to do, if we can) is to hold that it does not apply to this special tax of 30 cents, but only to the general tax of 35 cents. This, to my mind, is made certain and beyond question

for the following reason: The rate for the general tax is not fixed by the Constitution absolutely at 35 cents; it is only provided that this rate shall not be exceeded. The legislators can make it less if they desire, and the only effect of this statute upon the general tax is that it is made less than 35 cents, to wit, 21 cents. In other words, its provision or effect is that this general tax shall be, not 35 cents on each $100 worth of property, but 35 cents on each $180 worth, which is the same as 21 cents on each $100 worth. So far as the general tax is concerned, the Constitution is not offended, as is well and ably shown by the majority opinion and the cases cited.

The constitutional provisions, however, are entirely different, in both body and soul, in letter and in meaning, as to the special tax of 30 cents for school purposes. Here the Constitution fixes the rate and amount of the tax certainly and absolutely, dependent only upon the real value of the taxable property. It is not a mere maximum limitation, as is the case with the general tax, but it is by the spirit and the letter of the Constitution, fixed definitely and certainly at *"thirty cents on each hundred dollars of taxable property."* The only purpose of this change in verbiage was to put it out of the power of the Legislature to change the rate, either directly or indirectly. The Legislature, as the majority opinion states, can change the character, and therefore the *quantity,* of the property which is taxable, but it cannot, directly or indirectly, change the rate the Constitution makers have seen fit in no unmistakable language to fix; that is to say, this "thirty cents on each one hundred dollars of taxable property." As to this special tax, the rate is fixed by the Constitution and not by the statute. Of course it could be said that the Legislature intended that the statute in question should

apply to this special tax, but the answer is that intention must fail, because the rate has been fixed and made certain by a prior, higher, and superior power. If the rate fixed by the statute was the same as that fixed by the Constitution, it would be merely declaratory of the Constitution, and valid; but I understand the majority opinion to concede, in effect if not in words, that the present statute does change the rate as to either special or general taxes. If this be true, then it is only necessary to see if the Constitution fixes the rate as to this special tax, and, if so, whether it is the same rate fixed by the statute.

I think Justices SAYRE and SOMERVILLE have both conclusively shown (the former in both words and effect, and the latter in effect if not in words) that the Constitution does fix the rate at 30 cents on each $100 of taxable property. In fact, the Constitution says so in these exact words.

The theory of the majority opinion (if I rightly interpret it) is that the statute does not change or attempt to fix a rate, but provides only that "the taxable property within this state shall be assessed for the purpose of taxation at 60 per cent. of its fair and reasonable value." I do not think it fixes or changes the rate as to the special school tax provided for in section 260 of the Constitution; but, upon a different theory from that assigned in the majority opinion, I think it *does not* do so, because the Constitution prevents it. I do think the statute fixes the rate as to the general tax, because the Constitution does not prevent it.

The Legislature having no right or power to change or fix the rate as to the special tax, I think the statute should be construed as applying only to the general, and not to the special, tax. They are separate and distinct entities, taxes, and funds, and made so by the Con-

stitution; they are so assessed and collected, are kept separate and apart, and are applied to different purposes; and I see no reason why they may not be levied by separate laws. In fact, it is imperative that they be so levied, unless the rate fixed for the general be the same as that fixed by the Constitution. So far as the rate as to the special tax is concerned, the statute must be declaratory of the Constitution, otherwise it will be of no effect. While the Legislature not only may, but must, make the levy in both cases, because the Constitution says so, yet, so far as the rate is concerned, that is fixed by the Constitution. itself. If the statute in question applies to this special tax, as the majority opinion holds, then the levy must be 30 cents on each *$180* of taxable property, when the Constitution says it must be that rate on *"each hundred dollars* of taxable property"; or, to express the same thing in different words and figures, the statute says the levy must be *18 cents* on each $100 of taxable property, while the Constitution says it shall be *"thirty cents* on each hundred dollars of taxable property." For this reason I have no doubt that the statute in question ought not to be made to apply to this special tax, and, that in doing so, we allow the Legislature to do exactly what the Constitution makers intended should not be done; that is, allow the Legislature, at its own pleasure, to fix the amount of school funds from this source by changing the rate of taxation. If this had been contemplated, the Constitution would never have fixed the rate at *30* cents on each $100 of taxable property. It is, I think, both an unreasonable and an unnatural construction to say that this phrase means *not more than 30 cents* on each $100 of taxable property. If it means this, why did not the makers say so, as they did in every other instance in which any rate is mentioned as a maximum rate?

It may be said that my conclusion, if adopted, would destroy the homogeneity of the tax assessment laws of the state. If this be so, this is a question as to which the Constitution makers and the courts have no concern, so long as the amount of taxes or the rate thereof is not different from that fixed by the Constitution. The mode of assessment is purely a matter of legislative control; and whether it be simple or complex, easy or difficult, good or bad, if the Constitution is not violated (and it attempts to deal only with the levy rates and the equality thereof), then the courts cannot declare the statute void because cumbersome, inconvenient, or difficult to enforce. With the policy or the propriety of such laws the courts have no more concern than does the Legislature with the wisdom, propriety, or beneficence of this constitutional limitation put upon its power.