(93 South. 827)

## J. B. McCRARY CO. v. PURVIS, Tax Adjuster. (4 Div. 2.)

(Supreme Court of Alabama. June 29, 1922.)

Mandamus ⇐⇒10—Mandamus not available to enforce levy on unauthorized basis of more than 60 per cent. of fair and reasonable value.

Mandamus will not issue to ·compel a county tax adjuster to assess property within a town in the county at its fair and ,reasonable cash value in contravention of Const. 1901, § 216, and Code 1907, § 2112, as amended by Acts 1911, p. 185, § 36A, providing that property shall be assessed at 60 per cent. of its fair and reasonable cash value, notwithstanding that the municipality involved has contracted to levy a sufficient tax each year to meet accruing bonds and interest which cannot be met by a levy on the 60 per cent. basis.

Appeal from Circuit Court, Geneva County; H. A. Pearce, Judge.

Petition by the J. B. McCrary Company for writ of mandamus against R. J. Purvis, as Tax Adjuster of Geneva County. From a judgment denying the writ, petitioner appeals. Affirmed.

O. S. Lewis, of Dothan, for appellant.

Mandamus will lie against a city to compel a levy to pay debts. 57 Ala. 338; 146 Ala. 449, 42 South. 400. Where recourse for payment of bonds of a municipality is the power of taxation existing when the bonds were issued, any legislation which withdraws or limits the taxing power is void. 116 U. S. 289, 6 Sup. Ct. 398, 29 L. Ed. 620; 134 Fed. 215, 67 C. C. A. 142; 166 Ala. 366, 52 South. 61.

THOMAS, J. The application was for a rule nisi to require the tax adjuster of Geneva county to assess the taxable property within the corporate limits of the town of Samson at its reasonable cash value for the years 1919 to 1922, inclusive, to raise available revenue to pay the accruing bonds and interest thereon of the municipality issued for construction of a waterworks system and electric light plant.

The said municipal corporation within said county, on February 1, 1909, issued its bonds in sums, respectively, aggregating $25,000 for the construction of said public utilities, pursuant to ordinances duly adopted, and, in a deed of trust duly executed, agreed and contracted as follows:

"That the said town hereby irrevocably pledges itself until the principal and interest hereof shall be fully paid, to set aside and apply all of the net revenues derived from the operation of its water works and in addition thereto to levy and collect annually a tax on all the· taxable property in said city and to set apart out of its general revenues for the purpose of having a sum sufficient in the aggregate to promptly pay the interest as the same becomes due, and to provide a sinking fund sufficient to redeem this bond, at maturity."

It is averred that the municipality had made default in payment of principal and interest, and on September 20, 1910, a bill was filed by the trustee of the bondholders for foreclosure of the trust deed; and a decree of foreclosure entered June 14, 1912. Thereafter the municipality entered into agreement with that trustee whereby it issued refunding bonds, in the form of the ordinance incorporated in and made a part of the final (consent) decree, reciting the several transactions and ordinances of that municipality, of which were the following:

" * * * The town council shall annually in each of the years 1917 to 1946, both inclusive, and until the principal and interest of all of the bonds authorized by this ordinance to be issued shall .be paid, include and make due provision for the payment of the amounts provided to be collected and which shall not have been collected and be available out of the revenues of said waterworks and electric light plant and systems, by the levy of an annual tax for principal or interest of said bonds, or both, in the proceedings of the council required to be annually adopted, indicating the total amount of town tax to be levied and assessed on the taxable property for the then current fiscal year, which the town clerk shall at once certify as the law required. The town council shall also annually until the principal and interest of the bonds authorized by this ordinance to be issued, shall be fully paid, include in the annual appropriation ordinances the amounts of interest and principal of said bonds that are payable in the then succeeding years as in this ordinance provided.· * * *

"The city of Samson hereby pledges itself irrevocably until said bonds and coupons shall be fully paid, to levy a sufficient tax and to set aside sufficient funds to promptly pay what may be needed to meet the installments of principal and interest on each and every of said bonds as such installments shall, respectively mature, and the said town of Samson hereby pledges and certifies to whomsoever shall hereafter become the holder or holders of any of said bonds and coupons severally, that all conditions precedent to the issuing of said bonus and each of them, and the execution of said mortgage, have been faithfully and strictly observed, and it is hereby irrevocably covenanted and agreed that no objection questioning the validity of said bonds, or of said mortgage existed and that no such defense shall hereafter

---

⇐⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

be set up or attempted by the said town of Samson in any suit or proceeding."

And further:

"It is further covenanted and agreed by the town of Samson with each and all of the purchasers of said bonds and of the coupons and of all subsequent holders thereof, respectively, that the said bonds and coupons and each and every (one) of them, for all purposes shall be regarded as preferred claims as against, and shall have priority over any and all bonds or obligations which may be hereafter issued by said town, and the said town council of said town of Samson covenants and agrees with said purchasers and subsequent holders thereof, that the town and its proper authorities will promptly levy or cause to be levied and collected the said required tax and to set apart from its general revenues the said required sum or sums of money for the prompt payment of interest and to create a sinking fund to pay the principal sum of said bonds as herein provided, and that said town and its authorities will not at any time during the existence of the indebtedness represented by said bonds or coupons, or any part thereof, do anything that shall in any way impair or depreciate the value thereof, or any of them, or delay or postpone the prompt payment of any installment thereof."

The foregoing provisions of the ordinance contract were incorporated in the (consent) decree, as was also the trust deed containing the further provision:

"It is however expressly covenanted and agreed that the rights and liens of the deeds of trust hereinbefore described, dated February 1st, A. D. 1909, and which have been executed in behalf of said town to said Chicago Title & Trust Company shall be unimpaired by the execution of this instrument, which is to be construed as confirmatory, an extension of and supplemental to said instruments dated February 1, A. D. 1909."

The petition by the J. B. McCrary Company, a corporation, averred to be the owner of certain of said refunding bonds, was directed against R. J. Purvis as tax adjuster of Geneva county, Ala., and averred that the said municipality had defaulted in payment of said bonds and interest; that the town was insolvent; and that its council had already levied a tax of five mills on the one dollar of taxable property of said municipality, at the valuation fixed thereon by the tax adjuster or tax assessor of the taxable property within the municipality in the assessment of such property for state and county taxation for the preceding year; that said taxable property was assessed by the tax adjuster or tax assessor at 60 per cent. of its fair and reasonable market value; that the municipality, in levying a tax of one-half of one per centum on the fair and reasonable value of the properties within that municipality, will be unable to collect the sums due on bonds held by relator. It is also averred that written demand has been made on said

county tax adjuster to fix the value of all taxable property within the corporate limits of said municipality at its fair and reasonable cash value for the years 1919 to 1922, inclusive, respectively, so as to enable the municipality to levy a tax on the taxable properties within the municipality, at such valuation as to enable it to realize funds sufficient to pay the interest and principal on said bonds as the same accrued.

Statutory provisions of force at the time of the initial contract in 1909 on the part of the town of Samson with the bondholders or the trustees. therefor, to procure the necessary funds for construction of said public utilities, provided that real and personal property, for the purposes of assessment for taxation, shall "be estimated at its value in money, according to the best judgment the assessor can form upon information, inspection, or otherwise, taking into consideration, if real estate, its location, whether in town, city, or country, and whether it is vacant and lying idle, or is occupied and in use. * * *" Code 1907, § 2112.

The provisions of this statute were changed by the Act of March 31, 1911, p. 159, "to further provide for the revenues of the state of Alabama," and section 36A thereof providing:

"That the taxable property within this state shall be assessed, for the purpose of taxation, at sixty per cent. of its fair and reasonable cash value."

Before the enactment of the ordinances made a part of the foregoing trust deed of 1909, the organic law of the state provided that no city, town, village, or other municipal corporation, other than as provided in this article (article 11, Const.) shall levy or collect a' higher rate of taxation in any one year on the property situated therein than one-half of one per centum of the value of such property as assessed for state taxation during the preceding year; and provided for the cities and municipalities named, of which the town of Samson was not one (Const. § 216). Pursuant to the provisions of the act of 1911, the tax adjuster of Geneva county fixed the valuation of the taxable property lying and being within the town of Samson for the years 1919–1922, inclusive, for the state and county purposes, at 60 per cent. of its fair and reasonable cash value, and not under the provisions of section 2112, Code of 1907.

The question for decision, presented by the averments of the application for the rule nisi, is not such as was before the court in the several cases cited by petitioner (City Council of Eufaula v. Hickman, 57 Ala. 338; Graham v. Tuscumbia, 146 Ala. 449, 46 South. 400), and is different from the subject of Board of Revenue v. Farson, Son & Co., 197 Ala. 375, 72 South. 613, L. R. A. 1918B, 881; City of Ensley v. Simpson, 166 Ala. 366, 52 South. 61; Osborn v. Johnson Wall Paper Co., 99 Ala. 309, 313, 13 South. 776; Mobile v. Wat-

son, 116 U. S. 289, 6 Sup. Ct. 398, 29 L. Ed. 620; Hendrickson v. Apperson, 245 U. S. 105, 38 Sup. Ct. 44, 62 L. Ed. 178. Those authorities do not authorize the instant application directed to the official in question to compel him to disregard the provisions of section 36A of the Revenue Act of 1911, and to assess all the taxable properties within the municipality at more than 60 per cent. of its fair and reasonable cash value. The term is defined in State v. H. G. Woodward (Ala. Sup.) 93 South. 826;[1] State v. B'ham, Sou. Ry. Co., 182 Ala. 475, 62 South. 77, Ann. Cas. 1915D, 436.

The obvious answer, justifying the ruling of the lower court, is that such official is bound by the law governing his appointment and directing his acts during the incumbency of his office, which required that he make assessment for state and county purposes as the law warranted—on the basis declared by section 36A of the Act of 1911. Any other assessment by that official would destroy the uniformity of taxation.

The circuit court properly denied the writ. Affirmed.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.