# Wolfe *v.* Underwood.

91   523
121   287

*Bill in Equity (or Petition) for Dissolution of Corporation.*

1. *City Court of Birmingham; jurisdiction in equity to decree dissolution of corporation.*—Under the provisions of the statutes creating and defining the jurisdiction of the City Court of Birmingham (Sess. Acts 1884-5, p. 216; 1888-9, p. 992), it has "all the jurisdiction and powers which are now, or which may hereafter be, by law conferred upon the Chancery Court;" and this includes the statutory power (Code, § 1683) to decree the dissolution of a private corporation, organized and located in Jefferson county.

2. *Furnace company as private corporation; dissolution of.*—A corporation organized under the general statutes, for the purpose of operating a furnace, manufacturing iron, buying and selling iron and steel, &c., (Code of 1876, § 1803; Code, 1886, § 1563), and by special legislative act authorized to make contracts and connections with other similar corporations, is only a private corporation, and may be dissolved by the voluntary action of the stockholders themselves, as by law provided in the case of private corporations.

3. *Married women as parties.*—The statutory provision which declares that the wife "must sue alone, at law or in equity, upon all contracts made by or with her, or for the recovery of her separate property," &c. (Code, § 2347), applies to a bill or proceeding in equity for the dissolution of a private corporation, in which she is one of the petitioning stockholders.

APPEAL from the City Court of Birmingham, in equity.

Heard before the Hon. H. A. SHARPE.

The bill (or petition) in this case was filed on the 22d July, 1890, by W. T. Underwood and his wife, Mrs. Marinda B. Underwood, suing by her husband as next friend, with George L. Morris, and A. W. Smith as executor of the last will and testament of J. R. Edwards, deceased, as stockholders in the corporation called the *Mary Pratt Furnace Company*, against Joseph B. Wolfe and his wife, the other stockholders; and sought a dissolution of the corporation, the appointment of a receiver to take charge of its property, a sale thereof, and distribution of the proceeds among the stockholders. Said corporation

was organized under the general statutes in March, 1883, the declared objects and purposes being stated in the articles of incorporation as follows: "1st, the building, owning, buying, selling and operating blast and other furnace or furnaces; 2d, the making, selling, buying and handling of iron and steel in every shape and form; 3d, the making, selling, buying and handling of all articles made of iron or steel, or used in connection therewith; 4th, the mining, digging, selling and transporting iron, or other ore of metal; 5th, the mining, digging, transporting and selling of coal and other minerals, and the operating of coal mines; 6th, the making, selling, transporting and using of coke; 7th, to buy, sell, build, own and operate railroads and tram-roads, cars, engines, &c.; 8th, to buy, sell, hold and dispose of real estate and personal property, and to run a general merchandise business in connection with said works." The capital stock of the corporation was fixed at $300,000, of which the complainants, or petitioners, owned more than three-fourths, and the defendants owned the residue.

On the 23d February, 1889, an act was passed by the General Assembly of Alabama, "to enlarge the powers, rights and privileges of the *Mary Pratt Furnace Company*, an industrial, mining and manufacturing corporation, organized and chartered in Jefferson county under the general laws of Alabama;" the enacting words being as follows: "That in addition to the rights, powers and privileges granted to the *Mary Pratt Furnace Company*, under the general laws of Alabama governing the organization of such corporations, the said company shall have the right and authority to subscribe and pay for, buy and hold shares in the capital stock of any company incorporated for mining iron ore, stone, coal, fire-clay, or sand or coke mining within this State, from which said Mary Pratt Furnace Company may see fit to procure supplies of raw materials for the use of said company; and also in the capital stock of any rolling-mill, foundry, or other iron or steel manufacturing or working company, to which the said company may see fit to bargain or sell its own products. *Provided*, the consent of two-thirds in value of the stockholders of said *Mary Pratt Furnace Company* shall be first obtained thereto."

The articles of incorporation, and this amendatory statute, were made exhibits to the bill; the names of all the stockholders were stated, with the residences and number of shares of each; and the prayer for a dissolution of the corporation, &c., followed the words of the statute. The defendants demurred to the bill, or petition, assigning as grounds of demurrer, (1) that the court had no jurisdiction to decree a dissolu-

[Wolfe v. Underwood.]

tion of the corporation; (2) that the corporation was of a *quasi*-public character, and could not be voluntarily dissolved at the instance of the stockholders themselves; and (3) that Mrs. Underwood ought to have sued in her own name, without the interposition of a next friend. The court overruled the demurrer, and its decree is here assigned as error.

LANE & WHITE, for appellants.—(1.) Under constitutional provisions, the Chancery Court has jurisdiction of equitable causes of action only, and this case is not of equitable cognizance. (2.) If the Chancery Court has jurisdiction, under statutory provisions, to decree the dissolution of a private corporation, that jurisdiction is not conferred on the City Court of Birmingham. (3.) The *Mary Pratt Furnace Company* is not strictly a private corporation, but has powers of a *quasi*-public character; and it can not evade the performace of its public duties by a voluntary dissolution.—*In re New South Meeting-house*, 13 Allen, 497; 2 Waterman on Corporations, § 418; Taylor on Private Corporations, §§ 410, 431, 611. (4.) Mrs. Underwood ought to have sued in her own name and right.—Code, § 2347.

GARRETT & UNDERWOOD, *contra*, cited Code, § 1682; Sess. Acts 1888–9, p. 992; Code, § 2347; *Treadwell v. Man. Co.*, 7 Gray, 393; Anderson's Law Dictionary, 261; 125 U. S. 189; Bouv. Law D. 319, § 7.

COLEMAN, J.—The City Court of Birmingham was established by act of the General Assembly of Alabama approved December 9th, 1884. By the act it was declared, that the City Court of Birmingham "shall have and exercise all the jurisdiction and powers which now are, or may hereafter be, by law conferred on the several Circuit and Chancery Courts of this State, when exercising the jurisdiction and powers of courts of law."—Acts 1884–5, p. 216. This act was amended so as to read as follows: "Section 1. That there is hereby established, in and for the county of Jefferson, an inferior court of law and equity, which shall be called the City Court of Birmingham, . . . and is hereby also clothed with, and shall have and exercise all the jurisdiction and powers, which are now, or which may hereafter be, by law conferred upon the Chancery Court of this State."—Acts 1888–9, p. 992.

Code, § 1683: "Whenever a majority of the stockholders of any private corporation, owning three-fourths of the stock, wish to dissolve the corporation, they may do so, in the following manner: They shall file a petition in the Chancery

Court of the Division in which the corporation is located, or has its principal place of business, setting forth the name of all the stockholders and their residences, the amount of stock owned by each stockholder, as nearly as practicable all the property, real and personal, of the corporation, and stating that it is the wish of the petitioners to dissolve the corporation."

The bill alleges that the corporation "is located, and has its principal place of business, near the city of Birmingham, in the county of Jefferson, in the State of Alabama." We do not doubt that the City Court of Birmingham, within the limits of the county of Jefferson, has jurisdiction co-extensive with the Chancery Court of the division of which Jefferson county is a district.

It is contended that the corporation, the subject of the suit, is not a private corporation within the meaning of the statute. The corporation was organized under the general laws of Alabama governing the organization of private corporations, and its purposes and powers are within the express terms of section 1803 of the Code of 1876. The act of the legislature of February 23, 1889, enlarging its powers, added nothing, which in any manner changed its character as a private corporation. "The difference between public and private corporations is radical, and in many instances governed by widely different principles of law. Private corporations are associations formed by the voluntary agreement of their members, such as banking, railroad, and manufacturing companies. Public corporations are not voluntary associations at all, and there is no contractual relation between the corporators. States, counties and municipalities are examples of public corporations."—Morawetz on Priv. Corp., § 3. As every private corporation involves contractual relations, strictly speaking a legislature can not create a private corporation, without the consent of the corporators, and the legislature has not the power to create that consent. The legislature merely grants the right or franchise of forming a corporation, &c.—Morawetz, *supra*, § 24.

Public corporations are only such as are founded by the government for public purposes, where the whole interests belong also to the government. If, therefore, the foundation be private, though under the charter of the government, the corporation is private, however extended the use may be to which it is devoted, either by the bounty of the founder, or the nature and objects of the institutions.— *Trustees of Dartmouth College v. Woodward*, 4 Wheaton, 669. The distinction between public and private corporations, declared in 4 Wheaton, *supra*, has been generally followed since the decision of that cause.

4 Amer. & Eng. Encyc. of Law, p. 186, and numerous authorities cited in the note. In this State, railroad corporations have been declared to be private corporations.—*Ala. & Tenn. River R. R. Co. v. Kidd*, 29 Ala. 221.

Section 1683 of the Code first became a law by act of the legislature Feb. 10, 1875, and was codified as section 2054 of the Code 1876. In considering the case of *Merchants' & Planters' Line v. Waganer*, 71 Ala. 582, a private corporation, incorporated November 12, 1879, was declared to be "a purely private enterprise, organized solely for private emolument", without reference to any public duty, or duty pertaining to the public welfare; and although section 1683 of the Code was in force at the time of its organization and dissolution, the conclusion of the court was, that corporations of such a character might be dissolved by the stockholders, without the consent of the State, quoting the case of *Treadwell v. Salisbury Man. Co.*, 7 Gray, 393, where that court used the following language: "At common law, the right of corporations, acting by a majority of their stockholders, to sell their property, is absolute, and not limited as to objects, circumstances, or quantity. To this general rule there are exceptions arising from the nature of particular corporations, the purpose for which they were created, and the duties and liabilities imposed on them by their charter. Corporations established for objects *quasi*-public, such as railway, canal and turnpike corporations, to which the right of eminent domain and other large privileges are granted, in order to enable them to accommodate the public, may fall within the exception."—7 Gray, 404.

The decision in 71 Ala., *supra*, is an authority to show that section 1683 did not restrict the common-law powers of the stockholders of a corporation purely private, and without any public duties to perform, from exercising their common-law right to dissove the corporation, acting by a majority of the stockholders.

We do not hold that all corporations, not public corporations, may be dissolved by a bill or petition under section 1683 of the Code. Other provisions of the chapter of the Code of which that section is a part, may control its application. Possibly it may be limited to business corporations. We express no opinion on that question. See *In re New South Meeting House in Boston*, 13 Allen, 497; 7 Gray, *supra*. We have no hesitation in holding that the corporation sought to be dissolved in this case is a private corporation within the meaning of section 1683 of the Code.

It is contended that Marinda B. Underwood, a married woman, should have appeared as a complainant in her own name.

Section 2347 of the Code declares, "The wife must sue alone, at law or in equity, upon all contracts made by or with her, or for the recovery of her separate property, or for injuries to such property, or for its rents, incomes or profits, or for injuries to her person or reputation."

After the decree of dissolution, the statute provides that the Chancellor shall appoint a receiver of all the property and assets of the corporation, with power and direction to collect, by suit or otherwise, all debts and assets of the corporation. The residue, after the debts and costs are paid, shall be divided among the stockholders, according to the amount of stock owned by each.—Code, §§ 1686, 1690.    In decreeing a dissolution, the court ascertains and adjudicates she is a stockholder, and to this extent determines her rights and contractual relations in court for the final settlement of the receiver.    The final settlement of the receiver must be on principles analogous to settlements in other cases by receivers; and if it becomes necessary to render a decree respecting her interest, the decree should be in her name alone.    We think this is a suit within the meaning of section 2347 of the Code, and Marinda Underwood should have sued alone.

If further argument was needed, the litigation now pending would determine its character as such a suit.    The objection, that Mrs. Underwood ought to have sued in her own name, was well taken.    For this error alone, the case must be reversed.

Reversed and remanded.