(116 So. 695)

**ALABAMA STATE BRIDGE CORPORATION et al. v. SMITH. (3 Div. 828.)**

Supreme Court of Alabama. March 22, 1928.

**1. Statutes** ⬅124(3)—**Subject of act creating state bridge corporation held sufficiently expressed in title (Acts 1927, pp. 278–284; Const. 1901, § 45).**

Act Aug. 31, 1927 (Acts 1927, pp. 278–284), entitled "Act to provide for and authorize an incorporation * * * for the purpose of constructing * * * bridges and the approaches, for public use, on, or connecting highways in this state," held not to violate Const. 1901, § 45, providing that "each law shall contain but one subject, which shall be clearly expressed in its title," where main purpose of act was to construct bridges for pubic use, for which purpose bonds were to be issued.

**2. Statutes** ⬅16(1)—**Legislative journals must be considered in determining whether original purpose of bill is altered (Const. 1901, § 61).**

In determining whether Const. 1901, § 61, which provides that no bill shall be altered or amended on its passage through either house so as to change its original purpose, has been violated, court must refer to journals of both houses.

**3. Statutes** ⬅16(1)—**Act creating public corporation for construction of bridges at points to be determined held not void as changing purpose of bill originally introduced or making it special law (Acts 1927, pp. 278–284; Const. 1901, §§ 61, 110, 111, 229).**

Act Aug. 31, 1927 (Acts 1927, pp. 278–284), providing for creation of corporation to construct bridges for public use with authority to erect 15 bridges at points to be located by highway commission, held not void under Const. 1901, §§ 61 or 110, 111, as having been amended on its passage so as to change original purpose or become special, private, or local law, where original bill evidenced purpose to incorporate bridge company to construct like number of bridges at designated points, act as introduced not being in violation of Const. 1901, § 229, which prohibits conferring of corporate powers by Legislature, inasmuch as corporation was not a private corporation, and was not organized for profit.

**4. Counties** ⬅153½—**Act creating state bridge corporation, and authorizing it to contract with counties, held not unconstitutional as requiring county to pay charges previously paid out of state treasury (Acts 1927, pp. 278–284; Const. 1901, § 218).**

Act Aug. 31, 1927 (Acts 1927, pp. 278–284), providing for creation of state bridge corporation to construct bridges for public use, and giving authority to contract with county commissioners to pay sum of money in lieu of tolls, held not void under Const. 1901, § 218, as requiring counties to pay charges which are now payable out of state treasury.

**5. Statutes** ⬅38—**Act creating state bridge corporation to construct bridges in places designated by highway commission held not void as local law, enacted without publication (Acts 1927, pp. 278–284; Const. 1901, §§ 106, 110).**

Act Aug. 31, 1927 (Acts 1927, pp. 278–284), creating state bridge corporation for purpose of locating and constructing 15 bridges throughout state at places to be determined by highway commission, held not void under Const. 1901, §§ 106, 110, as local law enacted without publication.

**6. States** ⬅119—**Act creating state bridge corporation and authorizing bond issue for construction of bridges held not void under constitutional provision preventing extension of state's credit to corporations (Acts 1927, pp. 278–284; Const. 1901, § 94).**

Act Aug. 31, 1927 (Acts 1927, pp. 278–284), creating state bridge corporation, and authorizing construction of bridges to be built under issue of bonds, held not to violate Const. 1901, § 94, prohibiting lending of state's credit or granting of public money to corporations, since section relates to private corporations only.

**7. States** ⬅119—**Constitutional provision prohibiting granting of public money or lending of state's credit to corporations refers only to private corporations (Const. 1901, § 94).**

Const. 1901, § 94, prohibiting state from lending its credit or granting money to corporation by issuing bonds or otherwise, relates to private corporations only.

**8. Taxation** ⬅28, 49, 193—**Act creating state bridge corporation, permitting exemption of bridges constructed from taxation, and giving bondholders right to tolls as security, held valid (Acts 1927, pp. 278–284; Const. 1901, §§ 91, 211, 212, 214).**

Act Aug. 31, 1927 (Acts 1927, pp. 278–284), creating state bridge corporation, and

---

authorizing it to construct bridges through bond issuance, and providing for exemption of bridges from payment of taxes and for collection of tolls for benefit of bondholders in event of foreclosure, *held* not in violation of Const. 1901, §§ 91, 211, 212, 214, requiring taxation according to value and prohibiting delegation of power to levy taxes, though lien of mortgage bonds might be sold and property pass temporarily into the hands of private persons or corporations.

9. **Taxation** ☞40(2), 49—**Collection of tolls does not constitute levy or collection of taxes, and so does not involve requirement as to levy of taxes uniformly and according to value (Const. 1901, § 211).**

Fixation and collection of tolls on bridges is not levy or collection of taxes, and does not involve Const. 1901, § 211, providing that taxes shall be levied uniformly and according to value.

10. **States** ☞89—**Act creating state bridge corporation, and giving tolls as security for bond issuance, held not void as providing for donations of state land (Const. 1901, § 99; Acts 1927, pp. 278–284).**

Act creating state bridge corporation, and providing for bond issuance for construction of bridges, Act of Aug. 31, 1927 (Acts 1927, pp. 278–284), *held* not void under Const. 1901, § 99, as providing for donation or sale of state lands, though security given bondholders may result in vesting right in them to collect tolls.

11. **States** ☞117—**Act creating state bridge corporation and pledging tolls, surplus from gasoline tax, and receipts from convict department to payment of bonds held not void as creating "debt" due from state (Acts 1927, pp. 278–284; Const. Amend. art. 20A [see Acts Sp. Sess. 1927, p. 794], and Const. 1901, § 93, as amended in 1908 [see Acts 1907, p. 740], and superseded in 1922 [see Acts 1921, p. 1], and § 213; Gasoline Tax Act, § 10).**

Act Aug. 31, 1927 (Acts 1927, pp. 278–284), providing for creation of state bridge corporation and for issuance of bonds to permit construction of bridges, *held* not to violate Const. 1901, § 213, prohibiting creation of new debts against state where act pledged right to collect tolls and residue of receipts from gasoline tax collected under Excise Gas Tax Act approved January 25, 1927, known as Gasoline Tax Act (Acts 1927, p. 16 et seq.), over amount used under Const. Amend. art. 20A (see Acts Sp. Sess. 1927, p. 794), and section 10 of the act, and where interest might be paid out of net receipts from convict department under Const. 1901, § 93, amended by proclamation on November 17, 1908 (see Acts 1907, p. 740), and superseded in 1922 (see Acts 1921, p. 1); there being no debt on part of the state under such circumstances, since "debt" is that which state in any event is bound to pay, and an obligation secured by the general faith and credit of the state.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Debt.]

12. **States** ☞131—**Act providing for payment of interest on bonds of state bridge corporation from certain surplus state moneys held valid, where approval of Governor and warrants of state auditor were required (Acts 1927, pp. 278–284; Const. 1901, § 72).**

Act Aug. 31, 1927 (Acts 1927, pp. 278–284), creating state bridge corporation, and appropriating certain surplus moneys in state treasury to payment of interest on bridge bonds to be made on requisition of bridge corporation, approved by Governor and by warrants drawn on the state auditor, *held* not to violate Const. 1901, § 72, relative to payment of state moneys.

13. **States** ☞119—**Act creating state bridge corporation held not invalid because permitting state to engage in works of internal improvement (Acts 1927, pp. 278–284; Const. 1901, § 93, as amended [see Acts 1907, p. 740, and superseded in Acts 1921, p. 1]; Const. Amend. art. 20A [see Acts Sp. Sess. 1927, p. 794]).**

Act Aug. 31, 1927 (Acts 1927, pp. 278–284), creating state bridge corporation, with authority to construct bridges at designated number of points in state, and to issue bonds, *held* not to violate Constitution by permitting state to engage in works of internal improvement, in view of Const. 1901, § 93, as amended, see Acts 1907, p. 740, adopted in 1908, and superseded in 1921 (see Acts 1921, p. 1), permitting application of state convict fund for construction of public roads, and Const. Amend. art. 20A (see Acts Sp. Sess. 1927, p. 794), authorizing state to engage in construction, repair, and maintenance of public roads, highways, and bridges.

14. **Bridges** ☞14—**Fact that purchasers of bonds must take chance on surplus funds, in addition to tolls pledged, does not render act creating state bridge corporation invalid (Acts 1927, pp. 278–284).**

Act Aug. 31, 1927 (Acts 1927, pp. 278–284), providing for creation of bridge corporation and issuance of bonds to construct bridges, is not rendered unconstitutional by fact that purchasers will take chance as to surplus funds, in addition to tolls given as security, since wisdom of act does not affect its constitutionality.

Brown, Somerville, and Thomas, JJ., dissenting.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Bill for injunction by George L. Smith against the Alabama State Bridge Corporation and others. From a decree overruling a demurrer to the bill, respondents appeal. Reversed and remanded.

Steiner, Crum & Weil, of Montgomery, for appellants.

The corporation provided for by the act is not a private corporation, but a public institution. The Legislature had power to create same. White v. Ala. Insane Hospital, 138 Ala. 479, 35 So. 454; Trustees v. Winston, 5 Stew. & P. 17; Wolf v. Underwood,

91 Ala. 523, 8 So. 774; 12 C. J. 1031; 14 C. J. 72; State v. Board of Regents of U. of Kansas, 55 Kan. 389, 40 P. 656, 29 L. R. A. 378. Sections 104 (6) (20) and 229 of the Constitution apply to private corporations. City of Ensley v. Simpson, 166 Ala. 366, 52 So. 61; Ex parte City Council, 64 Ala. 467. The act deals with the organization of an institution to function in the public interest, a governmental institution; no private interests of any kind are granted or to be subserved. It is a general law, not a private law within sections 104 and 110 of the Constitution. State ex rel. v. Sayre, 142 Ala. 641, 39 So. 240, 4 Ann. Cas. 656. The act does not violate section 93 or amendments thereto, nor articles XX, XXA. In re Opinion of the Justices, 209 Ala. 593, 96 So. 487; Kasch v. Miller, 104 Ohio St. 281, 135 N. E. 813. The subject-matter of the act is clearly expressed in its title, and section 45 is not violated. State ex rel. v. Griffin, 132 Ala. 47, 31 So. 112; State v. Street, 117 Ala. 203, 23 So. 807; Williams v. Board of Rev., 123 Ala. 432, 26 So. 346. The powers of the Legislature are supreme, unless inhibited by the Constitution; and, since its power to construct and maintain highways and bridges is not prohibited, the Legislature had the power to enact the act in question. Dyer v. Tuskaloosa Bridge Co., 2 Port. 296, 27 Am. Dec. 655; Harrell v. Ellsworth, 17 Ala. 576; White v. Ala. Insane Hospital, 138 Ala. 479, 35 So. 454. It was permissible for the Legislature to delegate the administrative authority to locate bridges, rather than specifically name the locations itself. Parke v. Bradley, 204 Ala. 455, 86 So. 28. It is the court's duty to uphold the statute, unless it clearly appears to be unconstitutional. Byrd v. State, 212 Ala. 266, 102 So. 223; Fairhope Corp. v. Melville, 193 Ala. 289, 69 So. 466; State v. Joseph, 175 Ala. 579, 57 So. 942, Ann. Cas. 1914D, 248; State v. Birmingham So. R. Co., 182 Ala. 475, 62 So. 77, Ann. Cas. 1915D, 436.

Arthur B. Chilton, of Montgomery, for appellee.

G. W. L. Smith, of Brewton, amicus curiæ.

The act contains more than one subject in the title and in the body thereof, and is in violation of section 45 of the Constitution. Ex parte Pollard, 40 Ala. 99; A. G. S. v. Reed, 124 Ala. 253, 27 So. 19, 82 Am. St. Rep. 166; Builders' Co. v. Lucas & Co., 119 Ala. 202, 24 So. 416; Birmingham Min. Co. v. Tuscaloosa County, 137 Ala. 260, 34 So. 951; State v. So. Ry. Co., 115 Ala. 250, 22 So. 589; Mobile v. L. & N. R. Co., 124 Ala. 132, 26 So. 902. The original purpose of the act was to amend the general corporation laws of the state, but it was so amended on its passage as to make it a law chartering a special corporation. This rendered it invalid. Const. §§ 61, 111. The act undertakes to pass a special, private, or local law on the subjects enumerated in subdivisions 5, 6, 15, 19, 20, 25, and 27 of section 104 of the Constitution. Thomas v. State, 13 Ala. App. 429, 69 So. 413; City Bank & Trust Co. v. State, 172 Ala. 197, 55 So. 511. A local law is void if the same relief could be had under the general law. Const. § 105; McWhorter v. Lowndes County, 167 Ala. 370, 52 So. 750. See Acts 1927, p. 348; Code 1923, §§ 1347–1369, 6442, 6754, 6964–7220; Id., §§ 1046–2426. No notice of intention to apply for passage of the act was given as required by section 106. The act is special under section 110 of the Constitution. State v. Sayre, 142 Ala. 641, 39 So. 240, 4 Ann. Cas. 656; Holt v. Mayor, 111 Ala. 369, 19 So. 735; Wallace v. Board, 140 Ala. 491, 37 So. 321. The act is in violation of section 229, forbidding the conferring of corporate powers by special act. Ala. City R. Co. v. Kyle, 202 Ala. 552, 81 So. 54; City of Ensley v. Simpson, 166 Ala. 366, 52 So. 61. The Legislature shall not have power to require counties or other municipal corporations to pay any charges which are now payable out of the state treasury, Const. § 118; nor to authorize any county, city, or town to lend its credit or grant public money to any corporation, section 94. Rogers v. White, 14 Ala. App. 482, 70 So. 994; So. R. Co. v. Hartshorne, 162 Ala. 491, 50 So. 139; Jarrott v. Moberly, Fed. Cas. No. 7,223, 6 Dill. 253. Sections 72, 91, 211, 212, 213, and 214 are violated by the act. The state is prohibited from lending its credit to any corporation. Const. § 93, as amended; Tuskegee v. Macon County, 190 Ala. 631, 67 So. 394; Montgomery County v. Montgomery, 190 Ala. 366, 67 So. 311; Jefferson County v. Birmingham, 172 Ala. 154, 54 So. 757.

SAYRE, J. Proceeding in his right as citizen and taxpayer, appellee by his bill in this cause sought to enjoin an issue of bonds by the Alabama State Bridge Corporation under authority of the act of August 31, 1927 (Acts 1927, p. 278), entitled an "Act to provide for and authorize an incorporation by the Alabama highway director, the president of the state board of administration of Alabama and the chairman of the state tax commission of Alabama, for the purpose of constructing or causing to be constructed bridges and the approaches, for public use, on, or connecting highways in this state," etc. The bill avers that the act in question is unconstitutional and void, and this view found approval in the trial court where a demurrer assigning many grounds was overruled. From that ruling the bridge corporation takes this appeal.

The act is sui generis, and has provoked many objections to its constitutional validity which we have considered in the order of their presentation in the most elaborate of the two briefs filed on behalf of appellee.

[1] In the first place, it is said that the

act is offensive to section 45 of the Constitution, which requires that "each law shall contain but one subject, which shall be clearly expressed in its title." The main and inclusive subject of the act, as expressed in its title, is to create a corporation for the purpose of constructing bridges for public use on the highways of this state, and that subject is expressed with sufficient clearness in that part of the title quoted in the outset of this opinion. In the brief catalogue or index of the powers is found a statement of powers and duties, all of which are germane to the main subject and purpose of the act. In the body of the bill is found, as was to be expected, a statement of powers and duties much more in detail. In the leading case of Ballentyne v. Wickersham, 75 Ala. 533, it was held that, while the clause in question is mandatory, its requirements are not to be exactingly enforced, or in such manner as to cripple legislation, and that, when the subject is expressed in general terms, as is the case in that part of the title quoted above, the Constitution is satisfied, if all that follows is referable and cognate to the subject so expressed. "It is sufficient if the things regulated or forbidden in the body of the act fall within the generic purpose expressed in the title, and relate to it." State v. Stripling, 113 Ala. 120, 21 So. 409, 36 L. R. A. 81; Benners v. State, 124 Ala. 97, 26 So. 942. Scores of cases to the same general effect might be cited. Many of them may be found cited and briefly stated in the editorial note under section 45 in Mayfield's "Constitutions of Alabama." Grounds of objection to the act (Acts 1927, pp. 278–284) under this head are well-nigh as numerous as are its separable provisions. Each of them has had due consideration, whereupon it is the judgment of the court that everything in the catalogue or index of the title or in the body of the act may fairly be referred to that inclusive general title which has been quoted above (Alford v. State, 170 Ala. 218, 54 So. 213, Ann. Cas. 1912C, 1093); that there are no unrelated or incongruous provisions, nor any that by reasonable intendment may not be considered as necessarily or properly connected therewith in the effort to frame a statute to carry into effect the general purpose indicated by the title; and, therefore, that there is no offense against section 45 of the Constitution.

[2, 3] It is suggested that in the passage of the act section 61 of the Constitution has been violated. The section referred to is:

"No law shall be passed except by bill, and no bill shall be so altered or amended on its passage through either house as to change its original purpose."

In this connection we have considered section 111 of the Constitution, which provides that:

"No bill introduced as a general law in either house of the Legislature shall be so amended on its passage as to become a special, private, or local law."

We do not find in the act or its official legislative history, i. e., the journals of the two houses—to which, in this connection we must refer (Fourment v. State, 155 Ala. 109, 46 So. 266)—sufficient material on which to base approval of the objections here in question. The purpose all along was to provide for the building of bridges on, or in connection with, the highways of the state. The legislative journals show, and the act in its final shape affords, an inference to the same effect, that the bill introduced evidenced a purpose to amend the general corporation laws by providing for the incorporation of appellant in order that it might construct bridges at fifteen designated points in various parts of the state, but that the act issued from the legislative process as an act to provide specifically for the creation of appellant corporation which shall have authority to erect fifteen bridges at points to be located by the highway commission. It will be conceded that, if the bill in its original shape would have operated in any true sense to amend the general corporation laws of the state, it could not have been passed, because section 229 of the Constitution, in relevant part, commands that "the Legislature shall pass no special act conferring corporate powers." But, if the act had preserved the form of the bill as it was on its introduction, the result would have been an act the constitutional equivalent of the act in its final shape.

The original proposal to amend involved a misnomer, as the title and the body of the act proposed and the act in its final shape all show. The legal effect of the act first proposed, if its then shape had been preserved, would have been to provide for the creation of the same corporation that is provided for by the act in its present shape, with this difference: The bill definitely located the fifteen bridges to be constructed at fifteen designated places, as for example, "1. In Wilcox county, between Camden and Linden, Marengo county," whereas the act now provides, as stated above, that the fifteen bridges should be located by the highway commission. Such an act as that proposed would not have offended against section 229 of the Constitution because that section has reference to private corporations. In Ensley v. Simpson, 166 Ala. 366, 52 So. 61, we directed attention to the fact that in the official copy of the Constitution, on file in the office of the secretary of state, section 229 is grouped under the subhead "Private Corporations," and held that, if there had been reason for previous doubt as to the meaning and application of the section, such doubt was relieved by the arrangement shown in the original copy of the Constitution.

The act as it now appears and the act as

first proposed, notwithstanding its designation as an amendment in its first form, undertakes, and undertook in the first place, to create a public corporation for public purposes with which section 229 of the Constitution has nothing to do. The corporation authorized—and we take the authority to be in substance a command—is not intended as a private agency. It has no capital stock. No profit or other advantage is to be realized for the personal benefit of its members, who are officers of the state and ex officio members of the corporation. It is intended to put into use and operation public funds and agencies of the state for the common benefit of the people of the state. It would construct bridges for the public use and, in the end, free to the public. It is an arm of the state, with none of the limitations, disabilities, or responsibilities that affect private corporations as such. The act creating the corporation was and is, so far as concerns the objections heretofore stated, a valid exercise of legislative power.

Nor did the change as to the location of the fifteen bridges to be constructed work a change in the general purpose of the act. The bill in its original form would, and the act in its present shape does, invoke and witness the legislative will to provide for the execution of a general public purpose, and the result is a general law as defined by section 110 of the Constitution.

[4, 5] Section 218 of the Constitution provides:

"The Legislature shall not have the power to require counties or other municipal corporations to pay any charges which are now payable out of the state treasury,"

—and it is alleged in the brief for appellee that the act violates that section. The act provides that:

"As soon as any of the bridges herein authorized are put in operation. * * * The corporation is hereby given authority to contract with the board of revenue, court of county commissioners, or like governing body of any county in which a bridge may be constructed under the provisions of this act, for said county to pay annually a sum of money to be agreed upon by the corporation and said county authority; said sum of money to be in lieu of all toll for residents of said county; said sum of money to be paid only so long as the named bridge is under toll."

The language of the act purports to confer authority; no contribution is required. But the act does discriminate for or against some counties, for fifteen bridges cannot be located in 67 counties, and, for that reason, the idea seems to be, the act is a local act, according to the definition of the Constitution (section 110). In so far as the quoted provision of the act would help the construction and maintenance of bridges on the highways of the state, that is, as parts of such highways, whether in one place or another—and that, clearly enough, is its main, if not its sole, purpose, and that may be its effect—the act is a general law; but, in so far as it intends to confer a benefit on the residents of those counties in which bridges may be located, or, if a different manner of statement be preferred, in so far as it authorizes counties within the named class to assume the burden of contributing to the fund for the maintenance of bridges or for the payment of interest charges, it is partial in its operation, it is to be admitted, but is not on that account to be denounced as having been passed in disregard of the constitutional prohibition against the enactment of local laws without publication, as provided in section 106. It is clear that the requirement of publication of the purpose to apply for the passage of the law "in the county or counties where the matter or thing to be affected may be situated," that is, in the counties where bridges under the act are to be located, would deny the possibility of such legislation, since those counties could not be authoritatively located in advance of the enactment of the law; but this consideration only tends to reinforce the conclusion that the act is general because its controlling purpose is general, and the provision here in question is a mere incident. State v. Pitts, 160 Ala. 133, 49 So. 441, 686, 135 Am. St. Rep. 79.

[6, 7] It is suggested that the act is in violation of section 94 of the Constitution. This objection is obviated by the consideration that the section relates to private corporations only. Garland v. Board of Revenue, 87 Ala. 223, 6 So. 402.

[8, 9] Objections on account of sections 91, 211, 212, and 214 of the Constitution are not well taken. The bridges, if any, to be constructed under this act will belong to the state. They may be exempted from the payment of taxes, and this is true, notwithstanding the lien of the mortgage bonds, if any, to be sold under the authorization of the act may be foreclosed and the properties pass temporarily, that is, until the debt incurred in building is paid by tolls into the hands of private persons or corporations. Time enough to consider the effect of that eventuality when the occasion arises, for then, if ever, the question will be whether the purchaser shall pay taxes, as to which the act says nothing. But the answer to that question cannot, we think, make for or against the constitutionality of the act. As for the other objections taken in this connection: The fixation and collection of tolls is not the levy or collection of taxes, and the constitutional requirement that taxes shall be levied uniformly and according to value is foreign to any purpose or permit of the act.

[10] The objection taken in connection with section 99 of the Constitution is sufficiently answered by the fact that the act neither

contemplates nor provides for any donations or sale of land belonging to, or under the control of, the state. The act provides security for the lenders of money with which to build bridges; but security, though it may result in vesting the right to collect tolls for a time in the event of foreclosure, cannot be correctly termed a donation or sale.

[11] Section 213 of the Constitution is made the basis of an objection to the act. This section provides that "no new debt shall be created against, or incurred by this state," with exceptions and prescriptions of no relevancy to any provisions of the act. The act pledges the right to collect tolls until borrowed money shall be repaid, and "the residue of the receipts from the gasoline tax collected by the state under the Excise Gas Tax Act approved January 25, 1927, and known as the Gasoline Tax Act (Acts 1927, p. 16 et seq.), after there has been taken from that fund the amount necessary to meet all the primary purposes to which said gas tax fund is pledged under article 20A as an amendment to the Constitution of the state (see Acts Sp. Sess. 1927, p. 794), and as provided for in section 10 of the act approved January 25, 1927; or the interest may be paid out of the net receipts from the convict department, as authorized by amendment to section 93 of the Constitution, declared by proclamation on November 17, 1908 (which, we note, had been superseded by the broader terms of the revision of 1922); or the interest may be paid out of any funds in the treasury as authorized by the amendment to section 93 of the Constitution, as set out above." Our judgment is that "debt," within the meaning, the purview, the whole content, of the constitutional provision, is that which the state in any event is bound to pay, an obligation secured by the general faith and credit of the state. Bonds that may be issued for the construction of bridges under this act will not evidence such an obligation—will not be so secured. The surplus of several funds pledged in the first place for the security of bonds, the proceeds of which have, or will have, been used for other designated purposes or of funds devoted to other specified purposes—these surplus funds, along with the right to collect tolls, are pledged for the security of bonds to be negotiated for the building of bridges. If these special funds should for any reason fail of realization, or should be exhausted in execution of the primary purposes for which they may be raised, nothing will be left to creditors advancing money on the faith of the bonds authorized but the right to collect tolls. There is no promise on the part of the state to pay in any event; there is no pledge that there will be a surplus of any fund; there is no pledge of the general credit of the state; there will be no debt within the meaning of section 213.

[12] The moneys remaining as surplus, if any, will be in the treasury of the state, and such surplus, to the extent necessary to pay interest on the bonds authorized, is by the act appropriated to the payment of interest on the bridge bonds, and the provision is that payments shall be made on the requisition of the bridge corporation, approved by the Governor, and by warrants drawn by the state auditor. In all this we find no violation of section 72 of the Constitution.

[13, 14] By constitutional amendment proposed in the act to be found on page 740 of the Acts of 1907, and subsequently, in 1908, adopted by a vote of the people, section 93 of the Constitution was amended so as to permit the net proceeds from the state convict fund to be applied to the construction, repair, and maintenance of public roads, and additional appropriations might be made for that purpose. In 1921 section 93 was again amended. Acts 1921, p. 1; In re Opinions of the Justices, 209 Ala. 600, 96 So. 487. This amendment authorized, inter alia, the legislative appropriation of funds for the construction, repair, and maintenance of public roads, highways, and bridges in the state. In 1927, article 20A was added to the Constitution whereby the state was "authorized to engage in the construction, improvement, repair and maintenance of public roads, highways and bridges." See Acts 1927, p. 794. In view of these several amendments it cannot in reason be said that the act in question violates the Constitution by permitting the state to engage in works of internal improvement, or otherwise. By these amendments the state definitely embarked upon a program of internal improvement. True, Amendment 20A created a sinking fund to be derived from the levy of an excise of two cents a gallon upon gasoline, and to be used for the "prompt and faithful payment of the principal and interest on these bonds [bonds authorized by the amendment] and for the construction, maintenance and improvement of such public highways, roads and bridges [trunk roads and roads connecting county seats]." Whether the bridges authorized by the act now under consideration will be so located as to form a part of the roads contemplated by the amendment remains to be seen. How the gasoline tax fund will be allocated as between the sinking fund and the bridge funds authorized by this act remains to be seen. What the necessities of the sinking fund may be considered to require, and so whether anything be left for these bridge bond payments, remains to be seen. Purchasers of the bonds will need to take a chance as to these surplus funds, if tolls be not considered security enough, but that does not affect the constitutionality of the act, which in no wise depends upon the wisdom of its provisions.

The court does not find sufficient reason for

declaring the act in question to be in conflict with any provision of the Constitution. It follows that the judgment must be reversed.

Reversed and remanded.

ANDERSON, C. J., and GARDNER, J., concur.

SOMERVILLE, THOMAS, and BROWN, JJ., dissent.

BOULDIN, J., not sitting.

BRICKEN, P. J., of the Court of Appeals, having been appointed by the Governor according to the provision of section 10274 of the Code, concurs in the opinion of SAYRE, J.

BROWN, J. (dissenting). After due consideration, I am of the opinion that the act in question offends section 93 as amended, sections 213, 106, 111 and 45 of the Constitution of 1901. As introduced in the House, the title read:

"A bill to be entitled an act *to amend the incorporation laws of Alabama, so as* to provide for and authorize an incorporation by the Alabama highway director, the president of the state board of administration, and the chairman of the state tax commission for the purpose of constructing or causing to be constructed, bridges and approaches, for public use, on, or connecting highways in this state; to prescribe its powers and duties; to exercise the right of eminent domain; to provide for raising the necessary funds for such purpose; to prescribe the rights and powers of the purchasers of any bonds issued; to maintain and operate such bridges; to operate any such bridge or bridges for toll until the costs of construction and maintenance shall have been paid, *and to provide for the payment of interest on said bonds by the state of Alabama.*"

The first section of the bill contained the following:

"Be it enacted by the Legislature of Alabama, *that the incorporation laws of Alabama be amended* so as to provide for and authorize the incorporation by the Alabama highway director," etc.

On its passage through the House, among other amendments offered and adopted were amendments striking from the title of the bill and section 1 thereof the words italicized above.

The act as passed, for all intents and purposes, incorporates and charters the three persons designated, in their official character, as a corporation, the proceedings prescribed being pro forma, merely, with but a single object in view—the naming of the corporation. The first section of the act names the "Alabama highway director" as the president, and directs that "the vice president and secretary" be selected and designated by the three members. The general powers conferred are that it shall have succession by its corporate name for 20 years, sue and be sued and defend; to make and use a corporate seal, and to alter the same at pleasure; to own, hold and dispose of property, real and personal; to borrow money and secure the same by mortgage or deed of trust; to contract debts, issue notes, bonds, or other negotiable papers, mortgage, pledge, or otherwise transfer or convey "its real and personal and mixed property to secure the payment of money borrowed or any debts contracted; to appoint and employ such officers and agents as the business of the corporation may require; to wind up and dissolve itself, or be wound up and dissolved in the manner in this article provided."

In addition to these general powers, which are the essential attributes of the ordinary private business corporation, the act provides for "powers special," and recites:

"The main purpose of the corporation shall be to construct, maintain and operate bridges at the points herein named, and across the streams herein referred to, as well as the approaches thereto. The corporation is authorized to make the necessary surveys, soundings and borings, to determine the design of each bridge, and make or procure the proper plans and drawings, excepting however, that such bridge shall be of the standard design of the state highway commission of Alabama, *and shall be in conformity with the laws of the United States and the requirements of the War Department.*"

The act provides:

"For the purpose of providing funds for the building of the bridges herein authorized, the corporation is hereby authorized to borrow money from time to time in such amounts as it may be deemed best, *and as the Governor may approve,* and to execute therefor the notes or bonds of the corporation, signed by the three members thereof, *and attested by the secretary of state,* and to secure said notes or bonds and mortgage, *to pledge the bridges* and the tolls collected from said bridges for such time as may seem proper to said corporation, *with the approval of the Governor.* The tolls collected from said bridges, as hereinafter provided, shall be kept in a separate fund by the *state treasurer,* and are hereby specially pledged for the payment and retirement of the notes, bonds and mortgage, principal and interest, as the same become due, until the whole of them shall be paid. * * * The interest on said bonds may be paid out of the residue of the receipts from gasoline tax collected by the state under the excise gas tax act approved January 25, 1927, and known as the gasoline tax act after there has been taken from that fund the amount necessary to meet all of the primary purposes to which said gas tax fund is pledged under article XXA as an amendment to the Constitution of the state, and as provided for in section 10 of the act approved January 25, 1927; or the interest may be paid out of the net receipts from the convict department as authorized by amendment to section 93 of the Constitution, declared by proclamation on November 17, 1908; *or the interest may be paid out of any funds in the treasury as authorized by the amendment to section 93 of the Constitution, as set out above. Such an amount of money as may be necessary to pay the interest herein provided for is hereby*

*appropriated out of any monies in said funds not otherwise appropriated.* The payments herein provided for shall be made *on the requisition of the corporation, approved by the Governor, and by warrants drawn by the state auditor upon the state treasurer,* designating the fund out of which said interest may be paid. * * * The proceeds of such notes or bonds shall be turned into *the state treasury,* and shall be carried in a special bridge account to the credit of the corporation, and *shall be subject to be drawn on by the corporation, upon the approval of the Governor.* * * * Said corporation herein provided for shall build and construct fifteen bridges in Alabama under the provisions of this act but all of said fifteen bridges shall be *located by the state highway commission of Alabama.*"

The corporation is authorized to employ toll keepers, fix and collect tolls for the uses of bridges and approaches by the public. The tolls so collected are to be paid into the state treasury through the corporation, and kept in a "toll bridge account," which "shall be available to the corporation for the maintenance of the bridges constructed under this act, and the residue * * * from time to time be applied and paid out by the corporation for the retirement of the notes or bonds hereinabove authorized, and when the cost of all the bridges built under this act has been repaid, all of said bridges shall be immediately opened as free bridges to the traveling public, and shall thereafter be maintained as a part of the state highway system."

"The *corporation* is authorized to acquire by donation, or in its own name condemn by eminent domain such property, including gravel pits or other road material as may be necessary to carry out the purposes of this act, and for that purpose to bring and prosecute all necessary condemnation suits, and *the Attorney General and circuit solicitor* in each case shall act as attorney for the corporation *without additional compensation,* and any judgment rendered or allowance * * * agreed upon by the corporation shall be paid as a part of the expense of building said bridge."

The *corporation* is hereby authorized and empowered to build such bridges either by contract, or on force account. All contracts entered into by the *corporation* in connection with the building of these bridges shall be in writing, prepared by *the Attorney General of the state of Alabama,* and in conformity with the requirements of the *state highway commission,* and all *contracts shall be approved by the Governor.* In the sale of notes, bonds, or mortgages, *the corporation* shall have the right and power to agree with the lender of the money in default of the payment of principal and interest, either or both, and, in the event of foreclosure, that the purchaser at the sale shall have the right to operate the bridge upon the rate of toll provided herein, for such length of time *as the corporation may agree* may be necessary for the lender to get

return of the money, with interest not exceeding 6 per cent., *and expenses of foreclosure,* including expenses of operation and maintenance.

"*The maximum amount of bonds outstanding at any time shall not exceed* five million dollars."

The act provides for a dissolution of the corporation, at any time, by the filing of a formal declaration to that effect with the secretary of state, and "upon the filing of said certificate, the corporation shall cease, and *all of its property rights shall pass to the state of Alabama.*"

The foregoing résumé of the scope and provisions of the act is useful in developing its major subject and applying to it the constitutional limitations on legislative authority.

The last amendment of section 93 of the Constitution of 1901, proposed through the act of October 22, 1921, and adopted at the general election in November, 1922, superseding all other amendments to this section, provides that:

"The state shall not engage in works of internal improvement, nor lend money or its credit in aid of such, except as may be authorized by the Constitution of Alabama or amendments thereto ; *nor shall the state be interested* in any private *or corporate enterprise,* or lend money or its credit to any individual, association, *or corporation, except as may be expressly authorized by the Constitution of Alabama, or amendments thereto;* but when authorized by laws passed by the Legislature the state may appropriate funds to be applied to the construction, repair and maintenance of public roads, highways, and bridges in the state; and when authorized by appropriate laws passed by the Legislature, the state may at a cost of not exceeding ten million dollars engage in the work of internal improvement, of promoting, developing, constructing, maintaining, and operating all harbors or seaports within the state or its jurisdiction, provided, that such work or improvement shall always be and remain under the management and control of the state, through its state harbor commission, or other governing agency. The adoption of this amendment shall not affect in any manner any other amendment to the Constitution of Alabama which may be adopted pursuant to any act or resolution of this session of the Legislature."

The inhibition of this section of the Constitution, impinged by the act under consideration, is that the state shall not be interested in any corporation or corporate enterprise engaged in internal improvement, nor lend its money or credit to such corporation, unless authorized by the Constitution itself, or an amendment thereto. In re Opinions of the Justices, 209 Ala. 593, 96 So. 487; Garland v. Board of Revenue, etc., 87 Ala. 223, 6 So. 402.

While this amendment contemplates and authorizes the state, in its own name and right, and through its duly constituted agencies, to engage in the work of internal improvements to the extent of building and

maintaining public highways and bridges, and improving, maintaining, and operating seaports within its jurisdiction, it expressly prohibits the state from functioning through a corporation, and prohibits such corporation becoming a governmental agency to carry on such work.

That the act creates a corporation to engage in internal improvements is too obvious to permit of argument—this much is conceded by the majority. The corporate entity so created possesses all of the characteristics and powers of a private corporation, except it is without corporate stock, owns no property, and has no immediate prospects of acquiring property, except through its power to borrow money, and has no financial character other than such as may be reflected by the shadow of the state standing behind, on whose credit and through whose officers and agents it must function, if at all. It has the power of voluntary dissolution without the consent of its creator. Yet, adopting the cognomen, "Alabama State Bridge Corporation," it has the color and some of the attributes of a governmental agency with the power to contract debts, borrow money, and issue notes, bonds, and mortgages therefor, "*with the approval of the Governor*," limited by the provision that the bonded debt which it is authorized to contract shall not exceed *at any one time* $5,000,000, the proceeds of such bonds to be turned into the state treasury and disbursed, as other state funds, on the warrant of the state auditor. The interest on such bonded debt to be paid by the state, and to this end the Legislature has made an appropriation in the act of "any funds in the treasury as authorized by the amendment to section 93 of the Constitution, as set out above." Acts 1927, pp. 280, 281.

Taking a perspective view of the act, and what might follow, it is not plausible to contend that the quoted amendment confers power on the Legislature to set up such a hybrid corporation as a governmental agency—a mere man of straw—without financial character or resources, to engage in works of internal improvement, with the power to contract debts on which the state engages to pay interest, with authority to shirk all responsibility by a voluntary dissolution, with one of two results, that such obligations as it had contracted as a governmental agency would fall upon the shoulders of the state, or no one would be liable to those who advanced money on the obligations of such agency to further such internal improvements. The state, at least, would be liable for the interest, and, inasmuch as all of the funds are to be paid into the state treasury, and all of the holdings of such corporation, on its dissolution, pass to the state, it seems, on principles of equity, that the state cannot avoid liability for the principal. Either this, or the state might aid in perpetrating the fraud to its own benefit. Such result as the last is beneath the dignity of a sovereign state, and is unthinkable.

If the "Alabama Bridge Corporation" is a governmental agency representing and acting for a sovereign state—and it is either this or it is a private corporation—in making internal improvements of the state's public highways, on what theory or principle can the state say that the debts its agency contracts are not the debts of the state? The statute does not exempt the state from liability, and the money obtained on bonds issued or notes and mortgages given is to be paid into and received by the state treasury, and can only be paid out on the warrant of the state auditor. All the improvements made inure to the benefit of the state in the improvement of its public highways—a work which the state has undertaken. The corporation, viewed in this light, is a child of the state, and, on its dissolution, all of its property and rights of property become the property of the state. The state, when it contracts debts, must act through some one of its agents, and here we have an agency of the state empowered to borrow money to be turned into the state treasury, acting by legislative sanction, and the debts so contracted, on every principle of law and equity, are the debts of the state.

"A state entering into a contract lays aside its attributes of sovereignty, and binds itself, substantially, as one of its citizens does when he enters into a contract. * * * The Legislature may avoid payment of the obligations of the state by failure or refusal to make the necessary appropriation, and this is true although that body cannot impair the obligations of contracts; but after an appropriation has been made, the state cannot withdraw such appropriation when this would amount to an impairment of the obligation of its contract." 6 R. C. L. 334, § 326; Carr v. State, 127 Ind. 204, 26 N. E. 778, 11 L. R A. 370, 22 Am. St. Rep. 624; In re Ayers, 123 U. S. 443, 8 S. Ct. 164, 31 L. Ed. 216. The fact that payment of the principal of the debt may be defeated by the failure of the Legislature to make an appropriation does not alter the fact that the debt has been contracted by the state through its duly authorized agent. This view renders the act violative of section 213 of the Constitution.

As before stated, the legislative records show that the bill in its original form, both in its title and body, proposed to amend the general laws of the state authorizing the organization of private corporations, and on its passage through the House it was so amended as to confer corporate power and authority on the three associated persons named in the act, to wit, the highway director, the president of the tax commission, and the president of the board of administration, bringing it within the category of a special law, as defined by section 110 of the Constitution in these words:

"A special or private law within the meaning of this article is one which applies to an individual, association, or corporation,"

—and in this respect violated section 111 of the Constitution.

This act being a special law, not within the exceptions of section 106 of the Constitution, and it not affirmatively appearing that notice of the intention to apply therefor was given as required by that section, the mandate of the Constitution is that:

"The courts shall pronounce void every special, private or local law which the journals do not affirmatively show was passed in accordance with the provisions of this section." Constitution of 1901, § 106.

This court, speaking through one of its great Chief Justices, as to the effect of the Constitutional requirement that "each law shall contain but one subject" which must "be *clearly expressed* in its title," said:

"The unity of subject is an indispensable element of legislative acts; but it is not the only element; the subject must be 'clearly expressed in its title.' The purpose of this requisition is, as expressed in the second proposition of the exposition of Judge Cooley, 'to prevent surprise or fraud upon the Legislature by means of provisions in bills of which the title gives no intimation, and which might, therefore, be overlooked, and carelessly and unintentionally adopted.' The third proposition must be deemed, and by all authority is deemed, of equal importance—'to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or otherwise, if they so desire.'

"When there is fair expression of the subject in the title, all matters reasonably connected with it, and all proper agencies or instrumentalities, or measures, which will or may facilitate its accomplishment, are proper to be incorporated in the act, and, as usually said, are cognate or germane to the title. But, as was said in Astor v. Railway Co., 113 N. Y. 110, 20 N. E. 598 [2 L. R. A. 789]. 'The title must be such, at least, as fairly to support or give a clue to the subject dealt with in the act, and, unless it comes up to this standard, it falls below the constitutional requirement.'" Lindsay v. U. S. S. & L. Ass'n et al., 120 Ala. 156, 24 So. 171, 42 L. R. A. 783.

As stated by other authorities of equal force:

"Another abuse that developed in legislative bodies was the practice of enacting laws under false and misleading titles, thereby concealing from the members of the Legislature, and from the people, the true nature of the law so enacted. It is to prevent surreptitious legislation in this manner that the subject or object of a law is required to be stated in the title." 25 R. C. L. 83, § 83; First National Bank of Evergreen v. Hagood, Tax Assessor, 206 Ala. 308, 89 So. 497; Carter County v. Sinton, 120 U. S. 517, 7 S. Ct. 650, 30 L. Ed. 701; Pillans v. Hancock, 203 Ala. 570, 84 So. 757; Wallace v. Ball, 205 Ala. 623, 88 So. 442; State ex rel. Bassett, et al. v. Nelson, 210 Ala. 663, 98 So. 715; Stallings v. Nowell et al., 214 Ala. 118, 107 So. 47.

The title of the act in question, both as originally offered and as subsequently amended, foreshadowed the authorization of the formation of a private corporation, and in the title there is no suggestion that the subject of the act was the creation of a governmental agency with such large powers as this act proposed to create, and the enactment was in violation of section 45 of the Constitution of 1901.

I am therefore of opinion that the rulings of the circuit court were well considered, and that the decree appealed from should be affirmed.

SOMERVILLE and THOMAS, JJ., concur in so much of the foregoing opinion as relates to sections 93 and 213 of the Constitution.

BRICKEN, Special Judge. I concur in the opinion of Mr. Justice SAYRE and what has been so well said therein.

In reaching a conclusion as to the constitutionality of an act, it is the court's duty to uphold the statute, unless it clearly appears to be unconstitutional. Byrd v. State, 212 Ala. 266, 102 So. 223.

The courts can only hold an act unconstitutional when it violates the express terms of the Constitution, or the necessary implication of such express provision, and then only after it is found not to be fairly susceptible of a construction which would avoid such violation. Fairhope Single Tax Corporation v. Melville, 193 Ala. 289, 69 So. 466.

The courts may not declare a statute void unless it is clearly so beyond any reasonable doubt. State v. Joseph, 175 Ala. 579, 57 So. 942, Ann. Cas. 1914D, 248.

All doubt should be resolved in favor of the constitutionality of statutes. State v. Birmingham-Southern R. Co., 182 Ala. 475, 62 So. 77, Ann. Cas. 1915D, 436.

It is clear to my mind that the corporation authorized by the act approved August 31, 1927 (Acts 1927, p. 278), is a public institution as distinguished from a private corporation. There is no restriction on the power of the Legislature to create a body corporate to carry on specific work for the interest and benefit of the public. White v. Alabama Insane Hospital, 138 Ala. 479, 35 So. 454.

Speaking broadly, the Legislature of Alabama possesses all the legislative power which, under the Federal Constitution, resides in the state, except where that power has expressly or impliedly been taken from it by the Constitution of the state. State ex rel. Wilkinson v. Lane, 181 Ala. 646, 62 So. 31.

This conclusion disposes of many of the objections that are urged against the act in

question, and which are treated in the opinion of Mr. Justice SAYRE in this case.

The inhibition in section 213 of the Constitution against the creation, with certain exceptions, of any new "debt," does not invalidate the act in question. Any debt incurred by the corporation will be a corporate debt, for which the state will be neither legally nor morally responsible. Persons dealing with the corporation are advised in advance by the text of the act that the tolls collected from the bridges it is authorized to construct are specially pledged for the payment and retirement of notes, bonds, and mortgages, principal and interest, as they become due, until the whole of them shall be paid. The provision in the act that the interest on said bonds *may be paid* out of certain other funds therein enumerated, on requisition of the corporation, *approved by the Governor*, and by warrants drawn by the state auditor upon the state treasury, designating the fund out of which said interest may be paid, does not, in my opinion, constitute a pledge of those funds or the faith and credit of the state to the payment of either interest or principal. Persons contemplating acquiring evidence of indebtedness by the corporation are advised by the act that there is no provision or requirement that the interest shall be paid from such source, but only an authority so to do, if the Governor, in the exercise of executive discretion, approves such course of action. I know of no constitutional objection to the Legislature lodging a discretion of that kind in the chief executive of the state. It is not necessary that the statute exempt the state from liability. The Constitution itself does that.

For these reasons, I am of the opinion that the act is a valid enactment, and that the decree of the trial court was laid in error.